UNITED STATES of America,
Plaintiff–Appellee,

v.

Yolanda WILSON (97–1810) and Marlon Wilson (97–1695), Defendants–Appellants.

Nos. 97–1695, 97–1810.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 4, 1998.

Decided Feb. 25, 1999.

Mark V. Courtade, Asst. U.S. Attorney (argued and briefed), Grand Rapids, MI, for Plaintiff–Appellee.

Marlon Wilson (briefed), Christopher P. Yates (argued and briefed), Federal Public Defenders Office, Grand Rapids, MI, for Defendant–Appellant Marlon Wilson.

Michael A. Faraone (argued and briefed), Lansing, MI, Yolanda "Lonnie" Wilson, Pekin, IL, for Defendant–Appellant Yolanda "Lonnie" Wilson.

Before: MERRITT and COLE, Circuit Judges; EDMUNDS *, District Judge.

## OPINION

EDMUNDS, District Judge.

In 1996, a jury convicted Defendants Yolanda ("Lonnie") and Marlon Wilson, husband and wife, of conspiracy to distribute cocaine. The district court sentenced the pair to 168 months and 360 months of incarceration, respectively. Both Yolanda and Marlon appeal their convictions and sentences.

Each Defendant raises three points of error. Yolanda claims that the district court erred (1) in admitting co-conspirator statements at trial; (2) in determining the amount of cocaine attributable to her for sentencing purposes; and (3) in calculating her criminal history under U.S.S.G. § 4A1.1(d), by finding that she participated in the cocaine conspiracy while she was on probation. Marlon claims that the district court erred (1) in allowing a fatal variance between the con-

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michi-gan, sitting by designation.

spiracy stated in the indictment and the proof at trial; (2) in determining the amount of cocaine attributable to him for sentencing purposes; and (3) in applying the career offender guideline, U.S.S.G. § 4B1.1, because the court included his previous conviction for burglary.

For the reasons set forth below, the district court is AFFIRMED on every issue, except the application of the career offender guideline to Marlon Wilson based on his previous conviction for burglary. In light of our holding on that issue, Marlon Wilson's sentence is VACATED. Accordingly, this matter is REMANDED for re-sentencing because Wilson's 1980 conviction for burglary should not have been regarded as a "crime of violence" under U.S.S.G. § 4B1.2(1).[1]

## I. Background

Between 1993 and 1996, in Grand Rapids, Michigan, Marlon and Yolanda Wilson operated a cocaine distribution network out of their residence and a warehouse. The Wilsons were large-scale distributors of cocaine shipped from Chicago, Illinois on a weekly basis. Among the people with whom they conducted business were Leon Merriweather, Kevin Freeman, and Derrick Farr, who were collectively part of the "Merriweather Group." The Merriweather Group obtained their cocaine and crack cocaine from several different suppliers in various cities, including New York City, Detroit, and Chicago. Their affiliation with Marlon and Yolanda dates back to 1994. The Merriweather Group's initial cocaine purchase was during the summer of 1994 for one kilogram. Subsequent purchases ranged from one-half to two kilograms. The Merriweather Group dealt mainly with Yolanda during 1994, however, Leon Merriweather testified that Marlon frequently assisted his wife.

On one occasion in 1994, the Wilsons were unable to immediately deliver the $50,000 worth of cocaine the Merriweather Group ordered. Marlon met with Leon Merriweather to assure him that the two kilograms would be delivered as promised, though later than originally anticipated. Because of the delayed delivery, the Merriweather Group stopped buying cocaine from the Wilsons for about one year. During this period, the Wilsons supplied cocaine to numerous other drug traffickers, including Michael Harris. Harris testified that he lived with the Wilsons from December 1995 until February 1996. During that time, he said he often saw the Wilsons obtain five or more kilograms of cocaine at a time from their suppliers in Chicago and Gary, Indiana, which they then distributed to the Merriweather Group and others. Harris further testified that they stored the cocaine in a warehouse at Diamond and Wealthy Streets in Grand Rapids, and that they also sold cocaine to their customers from the warehouse.

On February 15, 1996, simultaneous search warrants were executed at the residences of Merriweather and Farr, and at least seven other locations throughout Grand Rapids. Most of the warrants were executed in the neighborhoods surrounding the Wilsons' residence. The search of Merriweather's house yielded one-fourth of a kilogram of cocaine, $14,000 in cash, and three guns. The search at Farr's revealed cocaine, a gun, cash, two scales and several pieces of paper that appeared to have drug tabulations on them. Both Merriweather and Farr admitted that the seized cocaine came from Yolanda and Marlon Wilson.

Harris testified that after Marlon learned of the searches taking place throughout the neighborhood, he called Harris at the Wilson residence and told him to "get the stuff and move it," referring to the cocaine. Just as the police were arriving at the Wilson residence to execute another search warrant, Harris was heading toward the warehouse with approximately five ounces of cocaine which he took from Marlon's bedroom following Marlon's phone call. The police proceeded to execute the search warrant. Although the search did not reveal any drugs, cash, guns, or drug paraphernalia, it did uncover tabulations that the Drug Enforcement Agent later testified were consistent with

---

1. The 1995 version of the United States Sentencing Guidelines was used in computing the offense levels in this case. (J.A. 365) Throughout this opinion, all references to the Guidelines relate to that version, unless otherwise indicated.

drug notations and drug records that he had seen previously. When Yolanda was subsequently arrested, agents seized a business card from her purse bearing the Chicago Bulls logo on one side and drug tabulations consistent with the price of three kilograms of cocaine on the other side.

On August 29, 1996, a grand jury sitting in the Western District of Michigan returned an indictment against the Defendants, charging them with conspiracy to distribute cocaine.[2] Merriweather and other members of the conspiracy agreed to cooperate with law enforcement authorities. At trial, Merriweather and Farr both testified that they purchased cocaine from the Wilsons, and Merriweather and Harris testified to the amount of cocaine that the Wilsons received on a weekly basis. Merriweather testified that "at the height of things [Yolanda] told me that she was getting at least five [kilograms] a week." (J.A. 193).

The jury convicted both Yolanda and Marlon of conspiracy to distribute cocaine. The Presentence Investigation Report incorporated testimony from Merriweather, who claimed he received at least one-half kilogram of cocaine every ten days from the Wilsons, with intermittent periods when he did not receive any. In relevant part, the report stated,

> If the Court were to consider the statement of Leon Merriweather wherein he stated he dealt with the defendants from spring of 1994, until his arrest in February of 1996 (a total of 22 months), and the statement he received a half kilogram every ten days, this would equate to 33 kilograms. If the Court were to consider the fact that these "dry periods" equaled one-half of the time frame, then the Wilsons would still be responsible for approximately 16.5 kilograms of cocaine.... In determining what quantity of cocaine the defendants should be held accountable for, this officer considered the most conservative estimate of 16.5 kilograms of high purity cocaine.

(J.A. at 364).

The district court sentenced Yolanda to 168 months of incarceration, and Marlon to 360 months of incarceration. Both filed timely notices of appeal.

This court has jurisdiction under 28 U.S.C. § 1291, which states that the courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291.

## II. Issues Raised by Yolanda Wilson

### A. District Court's Admission of Co-Conspirator Statements

▮▮▮ This court generally reviews for clear error the district court's conclusions with respect to whether co-conspirator statements may be properly admitted under Fed. R.Evid. 801(d)(2)(E). *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir.1992)(en banc), *cert. denied*, 516 U.S. 1098, 116 S.Ct. 827, 133 L.Ed.2d 769 (1996). In this case, however, counsel failed to raise at trial a timely objection to the co-conspirator testimony. If an evidentiary objection is not made at the time of the testimony, this court reviews the admission of the evidence for plain error. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir.1996). An evidentiary decision may be reversed under the plain error doctrine "only in exceptional circumstances" and only when the error is so plain that the trial judge was "derelict in countenancing it." *Id.*

▮▮▮ Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Before a district court may admit statements of a co-conspirator, three factors must be established: (1) that the conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the co-conspirator's statements were made in furtherance of the conspiracy. *United State v. Monus*, 128 F.3d 376, 392 (6th Cir.1997)(citing *Gessa*, 971 F.2d at 1261). This three-part test is often referred to as an *Enright* finding. *Cf. United States v. Enright*, 579 F.2d 980, 986–87 (6th Cir.1978).

---

**2.** The indictment also sought, in Count II, the forfeiture of real and personal property used in connection with the drug trafficking crimes. The forfeiture claim is not at issue in this appeal.

The party offering the statements bears the burden of proving these three factors by a preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Nevertheless, the district court may consider the hearsay statements themselves when inquiring into the existence of a conspiracy. *Bourjaily,* 483 U.S. at 181, 107 S.Ct. 2775; *see also Monus,* 128 F.3d at 392.

The 1997 Amendment to Federal Rule of Evidence 801 codifies the holding in*Bourjaily.* The advisory committee note also explains:

> The contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. The court must consider in addition the circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement in making its determination as to each preliminary question. Every court of appeals that has resolved this issue requires some evidence in addition to the contents of the statements.

Fed.R.Evid. 801 (advisory committee note).

■ Yolanda argues for the first time on appeal that the government has failed to show evidence of a conspiracy apart from the hearsay statements of her co-conspirators. In fact, however, substantial evidence supports the existence of a conspiracy. First, the co-conspirators made non-hearsay statements which reflect Yolanda's involvement in a conspiracy to distribute cocaine. For example, on direct examination, Leon Merriweather testified that he saw five kilograms of cocaine in the trunk of Yolanda's car. Each kilogram was wrapped as a Christmas present. (J.A. 195–96). Derrick Farr also testified on direct examination that he saw cocaine at Yolanda's house and that he and Merriweather picked up two packages wrapped like Christmas presents from Yolanda's house. The packages each contained a kilogram of cocaine. (J.A. 255–56).

Second, the government offers documents taken from the Wilsons' home reflecting drug sales, and a business card with tabulations suggestive of drug transactions. Special Agent Peters testified on direct examination that documents found in Yolanda's house are consistent with drug tabulations he encounters as a Drug Enforcement Officer. (J.A. 221–34). The numbers on the documents suggest the prices of kilograms and half kilograms of cocaine. The initials on the documents are consistent with the initials of those involved in the conspiracy. Agent Peters testified that no explanation other than drug trafficking would account for the numbers and initials on the documents found in Yolanda's home. (J.A. 228). The district court's conclusion that a conspiracy existed, independent of co-conspirator hearsay, does not rise to the level of plain error. The district court is AFFIRMED on this issue.

**B. District Court's Determination of the Amount of Cocaine Attributable to Yolanda**

■ This court reviews the district court's factual findings that underlie the application of the sentencing guidelines for clear error. *United States v. Mahaffey,* 53 F.3d 128, 131 (6th Cir.1995)(citing *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991)). The district court's determination of the amount of drugs for which a defendant is responsible is a factual finding which must be accepted unless clearly erroneous. *United States v. Walton,* 908 F.2d 1289, 1300–1301 (6th Cir.1990), *cert. denied* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

The district court found that Yolanda was responsible for at least 16.5 kilograms of cocaine, which calls for a base offense level of 34. U.S.S.G. § 2D1.1(c)(3). In support of her contention that she is not responsible for that amount of cocaine, Yolanda argues that some of the witnesses could not articulate the amount of cocaine she trafficked, and that co-conspirator Freeman's testimony conflicted with that of Merriweather's.[3]

---

3. Freeman attributed eight or nine kilograms to Yolanda, [J.A. 70], while Merriweather attributed over fifteen kilograms to her. (J.A. 193).

Where there is no actual drug seizure, it is more difficult to determine the actual amount of cocaine each individual defendant in the conspiracy is responsible for handling. Application note 12 to U.S.S.G. § 2D1.1 recognizes this problem:

Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.1, application note 12.

■■■■ Where there exists "jointly undertaken criminal activity," the base offense level is determined not only by acts committed by the defendant but also "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The district court must err on the side of caution when estimating the amount of drugs attributable to the defendant. *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.1990). But the amount of drugs involved for sentencing purposes need only be proved by a preponderance of the evidence. *United States v. Medina*, 992 F.2d 573, 590 (6th Cir.1993); *United States v. Moreno*, 899 F.2d 465, 473 (6th Cir.1990).

The district court's determination that Yolanda was responsible for at least 15 kilograms of cocaine was not clearly erroneous. A review of the sentencing hearing transcript reveals that the district court relied on the testimony of Leon Merriweather, Adrian Toliver, Michael Harris, and Derrick Farr in determining that 15 kilograms was a conservative estimate of the amount of drugs involved in this conspiracy. (J.A. 333–34) The court stated: "I don't think there was enough testimony to show there was 50 kilograms. But there's clearly enough to show that conservatively there were 15 kilograms involved in this matter." (J.A. 334) The district court noted the testimony of Farr who indicated that one to one and a half kilograms were purchased in late 1995. Farr also testified he came back later and bought two more kilograms. Further, the district court relied on the testimony of both Merriweather and Toliver's testimony both of whom indicated that from late 1995 until early 1996, Yolanda was receiving five kilograms on a weekly basis. On this record, an estimate that Yolanda was responsible for 16.5 kilograms of cocaine is not clearly erroneous. *United States v. West*, 948 F.2d 1042, 1045 (6th Cir.1991). The district court is AFFIRMED on this issue.[4]

## C. The District Court's Computation of Yolanda's Criminal History Category

■■■■ This court reviews the district court's factual findings in determining a defendant's criminal history category for clear error. *See United States v. Hamilton*, 929 F.2d 1126, 1130 (6th Cir.1991).

The Sentencing Guidelines require the district court to compute a criminal history category by assigning points for certain prior sentences. U.S.S.G. § 4A1.1. Section 4A1.1(d) requires that two points be added "if the defendant committed the instant of-

---

4. In reliance on *United States v. Medina*, 992 F.2d 573 (6th Cir.1993),Yolanda argues that the district court erred in failing to make a finding that the quantity of drugs attributable to her were reasonably foreseeable in light of the "jointly undertaken criminal activity." This argument is without merit. The district court's finding that Yolanda was responsible for at least 16.5 kilograms of cocaine was based on acts committed by Yolanda herself. *Contrast* U.S.S.G. § 1B1.3(a)(1)(A) *with* U.S.S.G. § 1B1.3(a)(1)(B). As application note 2 to U.S.S.G. § 1B1.3 instructs:

With respect to offenses involving contraband (including controlled substances), the defen-

dant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook. *The requirement of reasonable foreseeability applies only in respect to the conduct ... of others under subsection (a)(1)(B). It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes; such conduct is addressed under subsection (a)(1)(A).* U.S.S.G. § 1B1.3 (application note 2)(emphasis added).

fense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release or escape status." U.S.S.G. § 4A1.1(d). Application note 4 to U.S.S.G. § 4A1.1 relates specifically to subsection (d). In relevant part it reads: "Two points are added if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence, including probation...." U.S.S.G. § 4A1.1 (application note 4).

On November 12, 1992, Yolanda was arrested for first degree retail fraud. Following a plea of nolo contendere, she was fined and sentenced to two years probation on January 27, 1993. In August of 1996, an indictment charged Yolanda with the cocaine conspiracy at issue here. The indictment alleged that the conspiracy began in the Spring of 1994, which falls within the two year probationary period. In computing her criminal history category, the district court added two points in accordance with U.S.S.G. § 4A1.1(d) because it found that Yolanda conspired to distribute cocaine during her probation.[5] (J.A. 335).

Yolanda asserts that the cocaine she supplied to the Merriweather Group in 1994 was too remote in time to be part of the offense of conviction. The evidence adduced at trial reveals that the Wilsons' cocaine trafficking during 1994, 1995, and 1996 constituted a singular and on-going conspiracy. The indictment included the 1994 transactions with the Merriweather Group as part of the instant offense. Count I reads: "From in or about the spring of 1994, and continuing thereafter through and including February of 1996, ... YOLANDA "LONNIE" WILSON, and MARLON WILSON did knowingly, willfully and unlawfully combine, conspire, confederate and agree together and with Leon Merriweather, Derrick Farr, Kevin Freeman and other persons, both known and unknown to the Grand Jury to distribute and possess with intent to distribute ... cocaine." (J.A. 14). Although Yolanda's transactions with

the Merriweather Group ceased for a period of time, the drug trafficking continued with other individuals, such as Michael Harris. Therefore, the 1994 conduct is not uncharged, or part of a separate offense, but is part of one ongoing conspiracy. As our discussion of Marlon Wilson's fatal variance claim, *infra*, explains, there is no question that the 1994 cocaine sales were part of the same charged conspiratorial conduct as the later sales. Because Yolanda participated in the cocaine conspiracy while she was on probation for a prior felony, the district court did not err in computing her criminal history category. The district court is AFFIRMED on this issue, and therefore is AFFIRMED as to all claims of error raised by Yolanda Wilson.

## III. Issues Raised by Marlon Wilson

### A. Fatal Variance

 For the first time on appeal, Marlon claims that the district court allowed a fatal variance between the conspiracy set forth in the indictment and the proof of conspiracy at trial. Because he did not raise this claim at trial, he has forfeited it. A claim of error that has been forfeited is reviewed only for plain error. *See* Fed. R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Plain error occurs when the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732, 113 S.Ct. 1770. (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)); *United States v. Thomas,* 11 F.3d 620, 629–30 (6th Cir.1993).

 In order to obtain reversal due to a variance between the indictment and the evidence, a two-prong test must be satisfied. *United States v. Kelley,* 849 F.2d 999 (6th Cir.1988), *cert. denied,* 488 U.S. 982, 109 S.Ct. 532, 102 L.Ed.2d 564 (1988). The defendant must show: (1) a variance and (2)

---

**5.** The addition of these two points established a criminal history category of II, which, when combined with the offense level of 34, provided a guidelines range of 168–210 months imprisonment. If the two points had not been added,

Yolanda's criminal history category would have been I, which, when combined with the offense level of 34, would have provided a guidelines range of 151–188 months imprisonment. *See* Guidelines Sentencing Table.

that the variance affected some substantial right of the defendant. *Id.* at 1002. A "resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." *United States v. Warner,* 690 F.2d 545, 548 (6th Cir.1982) (citing *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The mere fact that a conspiracy can be subdivided, however, does not mean that multiple conspiracies existed. *United States v. Rugiero,* 20 F.3d 1387, 1392 (6th Cir.1994). As long as the different subgroups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy. *United States v. Warner,* 690 F.2d 545, 550, n. 8 (1982)(citing *United States v. Boyd,* 595 F.2d 120, 123 (3d Cir.1978)).

██ Marlon claims that the indictment alleged one conspiracy, while the evidence at trial supported a finding of multiple conspiracies. Marlon relies primarily upon a statement made by the Assistant U.S. Attorney, in closing argument, that Michael Harris was unconnected to the Merriweather Group. "Totally different. He's separate from them ... This is a totally separate drug dealer not connected with them." (J.A. 322–23). Marlon asserts that his involvement with the Merriweather Group was limited, and that his primary dealings were with Michael Harris. He thus concludes that because Michael Harris was, in the AUSA's words, totally separate from the Merriweather Group, the government proved two conspiracies instead of one.

██ Marlon's contention is unpersuasive.[6] We are satisfied that the record evidence supported a finding of a single conspiracy. Leon Merriweather testified that he became acquainted with Marlon in 1994 when Marlon met with the Merriweather Group in order to assure them that the two kilograms of cocaine that they ordered from Lonnie for $50,000 would be delivered, albeit late. (J.A. 196–97). Thus Marlon was involved in Merriweather Group transactions in 1994 and

again during 1995–96, following the one year "break." (J.A. 206). This one year break does not result in two separate conspiracies. The indictment charged the Wilsons with drug trafficking with the Merriweather Group, "*and other persons, both known and unknown to the Grand Jury.*" (J.A. 14). The Wilsons continued distributing drugs to others during the "Merriweather break," including Michael Harris, and Shontae Washington, and resumed their transactions with the Merriweather Group after the hiatus. As this Court noted in *United States v. Warner,* 690 F.2d 545 (6th Cir.1982), the fact that individuals may intermittently involve themselves in a conspiracy does not preclude a finding that the conspiracy was singular in nature.

> The agreement may continue for a long period of time and may include the performance of many transactions. New parties may join the agreement at any time while others may terminate their relationship. The parties are not always identical, but this does not mean that there are separate conspiracies.

*Id.,*(quoting *United States v. Varelli,* 407 F.2d 735, 742 (7th Cir.1969)). *Accord United States v. Boyd,* 595 F.2d 120, 123 (3d Cir. 1978).

Marlon cannot demonstrate a variance, so we need not reach the issue of prejudice. The district court committed no error and is AFFIRMED on this issue.

## B. District Court's Determination of the Amount of Cocaine Attributable to Marlon

██ This court reviews the district court's factual findings that underlie the application of the sentencing guidelines for clear error. *United States v. Mahaffey,* 53 F.3d 128, 131 (6th Cir.1995)(citing *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991)). The district court's determination of the amount of drugs for which a defendant is responsible is a factual finding which must be accepted unless it is clearly

6. As juries are reminded at the close of every trial, an attorney's closing argument is not evidence. SJI 1.04(3). The AUSA's characterization of the evidence, while perhaps a poor choice of words, does not negate the fact that a single conspiracy was charged in the indictment and proven at trial.

erroneous. *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.1990), *cert. denied* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

Marlon claims the district court clearly erred in attributing 16.5 kilograms of cocaine to him, placing him at a base offense level of 34. U.S.S.G. § 2D1.1(c)(3). Instead, Marlon argues he should have been held responsible for a range of at least 5 kilograms, but less than 15 kilograms, placing his base offense level at 32. U.S.S.G. § 2D1.1(c)(3). In support of his argument, Marlon claims that the district court attributed to him large quantities of cocaine for which Yolanda was primarily responsible. Marlon recognizes that "a participant is responsible for other conspirators' conduct only if that conduct was reasonably foreseeable to him and in furtherance of the execution of the jointly undertaken criminal activity." *United States v. Jenkins,* 4 F.3d 1338, 1346 (6th Cir.1993). He argues, however, that he should not be held responsible for "the periodic drug transactions in late 1995 involving Yolanda Wilson and Leon Merriweather ..." (Final Brief of Appellant Marlon Wilson at 18).

Marlon's argument must fail. As explained by this Court in *United States v. Jenkins,* 4 F.3d 1338 (6th Cir.1993), a district court's determination of the amount of cocaine attributable to an individual involved in a conspiracy can be characterized as twofold. First, the court must determine the scope of the criminal activity the particular defendant agreed to jointly undertake. *Id.* at 1347, quoting U.S.S.G. § 1B1.3, application note 2. Once that determination is made, the court must then consider what amount of cocaine was reasonably foreseeable, within the scope of the defendant's joint undertaking. This dual inquiry is based upon U.S.S.G. § 1B1.3. As this Court stated in *Jenkins:* "A co-conspirator is not necessarily responsible for the total amount of cocaine involved in the conspiracy for purposes of establishing his base offense level. Rather, a participant is responsible for other conspirators' conduct only if the conduct was reasonably foreseeable to him and in furtherance of the jointly undertaken criminal activity." *Id.*

at 1346; *see also* U.S.S.G. § 1B1.3, application note 2.

With this standard in mind, a review of the district court's colloquy at the sentencing hearing establishes that no error was committed. The district court made specific references to testimony in the record relating to the scope of Marlon's involvement in the drug trafficking conspiracy. The district court observed that the testimony regarding Marlon's involvement in selling drugs to Michael Harris and to Shontae Washington in quantities of 18 to 36 ounces at a time was unrefuted. The district court also noted that there were no internal inconsistencies concerning the testimony. The court relied upon Leon Merriweather's testimony that Marlon knew what was going on during the time frame involved in the indictment. Trial testimony established that Marlon was involved in the conspiracy as early as 1994 when he met with Merriweather in an attempt to resolve the misunderstanding concerning the $50,000 payment for the two kilograms which were not delivered on time. (J.A. 196–97). Furthermore, to the extent that Marlon argues he should not be held accountable for "transactions between Yolanda Wilson and Leon Merriweather in late 1995," this argument fails because the testimony reveals not only that Marlon participated in weighing cocaine for Merriweather, but also that he sold drugs directly to Merriweather in late 1995. (J.A. 199). Therefore, the scope of Marlon's involvement in the conspiracy spanned the length of the charged conspiracy, as the district court found.

We do not agree with Marlon's argument that he should be held accountable for only those transactions in which he played some small role. The scope of his responsibility is determined by the reasonable foreseeability of the amount of cocaine involved in the conspiracy. As with the amount of cocaine attributable to Yolanda, the district court did not clearly err in attributing 16.5 kilograms of cocaine to Marlon. The district court was conservative in its calculation, recognizing that, "there was at least 15 kilos, and most probably more." (J.A. 350). Marlon was cognizant of the volume of cocaine involved in the conspiracy, and it was not clearly errone-

ous to attribute more than 15 kilograms of cocaine to him for sentencing purposes in this matter. The district court is AFFIRMED on this issue.

## C. The District Court's Application of the Career Offender Guideline Based on Marlon's Burglary Conviction

■ Lastly, Marlon argues that the district court erred in qualifying him as a career offender for sentencing purposes. The district court's determination based on the guidelines is a question of law subject to *de novo* review. *United States v. Arnold,* 58 F.3d 1117, 1120 (6th Cir.1995), *cert. denied,* 519 U.S. 1019, 117 S.Ct. 535, 136 L.Ed.2d 420 (1996); *United States v. Bondurant,* 39 F.3d 665, 667 (6th Cir.1994).

A defendant qualifies as a career offender for sentencing purposes if:

> (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.

The district court treated Marlon as a career offender because (1) he was over eighteen at the time he committed the instant offense; (2) the instant offense involved a controlled substance; and (3) he had a prior armed robbery conviction and a prior Illinois burglary conviction, which the district court deemed to be crimes of violence. As a result, Marlon's base offense level was increased from 34 to 37, and his criminal history category was adjusted upward from III to VI. (J.A. 366). Marlon now contends that his 1980 conviction for burglarizing a liquor store

in Illinois should not have been considered a crime of violence.

■ The Courts of Appeals are split over whether burglary of a building that is not a dwelling is a "crime of violence" under the Sentencing Guidelines.[7] We conclude that such a burglary is not a crime of violence *per se* as that term is defined in U.S.S.G. § 4B1.2(1)(ii), but that burglary of a non-dwelling may, under certain circumstances, be considered a crime of violence under that section's "otherwise clause." We adopt this approach based on the specific language of the Guideline because the history surrounding its adoption renders the Commission's intent difficult to ascertain. Our plain meaning approach respects the Commission's definition of "crime of violence" which has remained unchanged since 1989, and leaves open the possibility that violent burglaries of non-dwellings may constitute crimes of violence.

The term "crime of violence" is defined in the Sentencing Guidelines as,

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is *burglary of a dwelling,* arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(1)(emphasis added).

The application notes following this section clarify the definition. As explained in application note 2,

> "Crime of violence" includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are

---

7. For cases holding that burglary of a building other than a dwelling is never a crime of violence, see *United States v. Harrison,* 58 F.3d 115, 119 (4th Cir.1995); *United States v. Spell,* 44 F.3d 936, 938–39 (11th Cir.1995); and *United States v. Smith,* 10 F.3d 724, 733 (10th Cir.1993). For cases holding that such a burglary is a crime of violence see *United States v. Hascall,* 76 F.3d 902, 904–06 (8th Cir.1996); and *United States v. Fiore,* 983 F.2d 1, 4–5 (1st Cir.1992). For a case

holding that the status of the burglary depends on the defendant's conduct see *United States v. Jackson,* 22 F.3d 583, 585 (5th Cir.1994). For a recent discussion of this subject see John Patrick Crossett, *The United States Sentencing Commission and the Problem of Non–Residential Burglary Under the Career Offender Provision of the Federal Sentencing Guidelines,* 6 GEO. MASON L. REV. 675 (1998).

included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its very nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of inquiry.

U.S.S.G. § 4B1.2 (application note 2).

Based on section 4B1.2 and its commentary, the Sentencing Commission envisioned three ways in which a prior conviction could be considered a "crime of violence": "(1) the prior conviction is for a crime that is among those specifically enumerated ...; (2) the prior conviction is for a crime that, although not specifically enumerated, has as an element of the offense the use, attempted use, or threatened use of physical force; or (3) the prior conviction is for a crime that, although neither specifically enumerated nor involving physical force as an element of the offense, involves conduct posing a serious potential risk of physical injury to another." *United States v. Arnold,* 58 F.3d 1117, 1121 (6th Cir.1995)(quoting *United States v. John,* 936 F.2d 764, 767 (3d Cir.1991)).

Marlon was convicted under 720 ILCS 5/19-1 which provides, "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building, house trailer, water craft, aircraft, motor vehicle ..., railroad car, or any part thereof, with intent to commit therein a felony or theft.... This offense shall not include ... the offense of residential burglary." 720 ILCS 5/19-1(a). The statute does not contain as an element the use, attempted use,

or threatened use of physical force against another. Therefore it does not fit the definition for a crime of violence under part (i) of U.S.S.G. § 4B1.2(1), and the Court must focus its attention upon part (ii) of the definition. Accordingly, we must determine whether Defendant's burglary conviction was a crime of violence because it is covered by the enumerated felony "burglary of a dwelling," or alternatively because it "otherwise involve[d] conduct that presents a serious risk of physical injury to another." [8]

A brief review of the history surrounding the adoption of the "crime of violence" definition places this issue in context. When the Sentencing Commission promulgated the career offender provision and definition, it originally sought to define "crime of violence" by reference to the broad categories set forth in 18 U.S.C. § 16. Section 16 reads, "The term 'crime of violence' means (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16. However, in 1989, the Commission abandoned this broad approach and replaced this definition with another, patterned after the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B).[9] *See* U.S.S.G. Manual, Appendix C, Amendment 268, effective November 1, 1989 (1997).

The Armed Career Criminal Act (ACCA) provides for sentence enhancements for persons convicted under section 922(g) who have three prior convictions for specified types of offenses, including burglary. While Congress did not specifically define burglary in the statute, the United States Supreme

---

**8.** This language, taken from the definition of a "crime of violence" in U.S.S.G. § 4B1.2(1)(ii), is sometimes referred to as the "otherwise clause."

**9.** The Commission's 1989 amendments do not explain why this change was made. The amendment's commentary merely states, "The purpose of this amendment is to clarify the definitions of crime of violence and controlled substance offense used in this guideline. The definition of crime of violence used in this amendment is

derived from 18 U.S.C. § 924(e). In addition the amendment clarifies that all pertinent definitions and instructions in § 4A1.2 apply to this section. The effective date of this amendment is November 1, 1989." U.S.S.G. Manual, Appendix C, Amendment 268, (1997). It is important to note that the comment says the definition of a crime of violence is "derived from," not that it is identical to, 18 U.S.C. § 924(e).

Court in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), held that Congress intended the "generic" term of burglary, which includes unlawful entry into any building or structure with the intent to commit a crime. *Id.* at 599, 110 S.Ct. 2143.

Although the Sentencing Commission derived its definition of "crime of violence" from the ACCA, the Commission chose to omit burglary from the definition, with the single exception of "burglary of a dwelling." U.S.S.G. § 4B1.2(1)(ii) (Nov.1989). The Commission has retained this wording since. *See* U.S.S.G. § 4B1.2(1)(ii) (Nov.1998). Therefore, the definition of a crime of violence in the career offender section of the Sentencing Guidelines is similar to, but contains an important distinction from, the definition of a violent felony under the ACCA. The Commission's retention of the wording "burglary of a dwelling" indicates its reluctance to adopt the ACCA-*Taylor* broad definition of burglary.

Yet, the Commission's intent is far from clear. The Sentencing Commission has considered and failed to adopt various amendments to section 4B1.2 over the years which would address the question of whether "burglary of a dwelling" should be interpreted broadly or narrowly. For example, in December 1992, the Commission considered a proposed amendment to the definition of a crime of violence which would have amended that section "to include all burglaries, and not just burglaries of a dwelling." 57 Fed. Reg. 62832, 62856–57 (proposed Dec. 31, 1992). This proposed change was rejected. Subsequently, in 1993, another proposed amendment sought to add language to application note 2 which would have clarified that, "The term 'crime of violence' includes burglary of a dwelling (including any adjacent outbuilding considered part of the dwelling). It does not include other kinds of burglary." 58 Fed.Reg. 67522, 67533 (proposed December 21, 1993). The Commission also failed to adopt this approach.

The Commission's conflicting history on this point makes it impossible to fairly ascertain its intent. The other Circuits that have considered this issue have had similar difficulty. As the Eight Circuit noted in *United States v. Hascall*, 76 F.3d 902 (8th Cir.1996), "[w]e fail to see how the Commission's inconsistent path supports a particular view on this issue." *Id.* at 906. Therefore, we are left to a plain reading of the Guideline, keeping in mind the canon of construction "expressio unius est, exclusio alterius" (the expression of one means the exclusion of all others). *See United States v. Spell*, 44 F.3d 936, 938–39 (11th Cir.1995) (holding that "by explicitly including the burglary of a dwelling as a crime of violence, the Guidelines intended to exclude from the violent crime category those burglaries which do not involve dwellings and occupied structures.")

■ A plain reading of section 4B1.2(1)(ii) indicates that only burglaries of dwellings, not all burglaries, should be considered crimes of violence *per se*. Thus Marlon Wilson's prior commercial burglary conviction, under a statute which specifically excludes residential burglary,[10] cannot be included within the specifically enumerated felony "burglary of a dwelling."

Nonetheless, the "otherwise clause" leaves open the possibility that burglaries of structures other than dwellings could fall within the definition of a crime of violence if the crime, "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). The plain language of application note 2 supports this interpretation. The commentary reads:

> "Crime of violence" includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and *burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives ... or, by its nature, presented a serious potential risk of physical injury to another.* Under this

---

10. *See* 720 ILCS 5/19–1(a).

section the conduct of which the defendant was convicted is the focus of inquiry.

U.S.S.G. § 4B1.2 (application note 2)(emphasis added).

A straightforward reading of the application note suggests that other offenses fall within the definition of a crime of violence where the crime, by its nature, creates a serious potential risk of injury to another person. Therefore, where a defendant commits an offense that involves such conduct, that offense could be covered by the otherwise clause without being a felony specifically mentioned by that section or that section's application note. In such cases, it is possible that the burglary of a non-dwelling may be a crime of violence.

In *United States v. Arnold,* 58 F.3d 1117 (6th Cir.1995), which circumscribed the ability of a sentencing court to consider the facts of a Defendant's prior conviction, we suggested that where a

> statute does not clearly establish that the offense involves the 'use, attempted use, or threatened use of physical force,' the court may then look at the charge in the indictment to which the defendant pled guilty or was adjudged guilty to determine if the offense involved a serious potential risk of physical injury to others. In the case of a guilty plea, the district court may also consider the plea agreement relating to the prior offense.

*Id.* at 1124. As noted above, the statute under which Marlon was convicted does not contain as an element the use, attempted use, or threatened use of physical force. *See* 720 ILCS 5/19–1. Therefore, the conduct set forth in the indictment upon which Marlon

Wilson's 1980 burglary was based can be used in deciding whether the offense should be considered a crime of violence for purposes of the career offender guideline.

The indictment that led to Marlon's prior conviction is not part of the record on appeal. Therefore, on remand, the district court may consider the charge in the burglary indictment to determine whether the offense presented a serious potential risk of physical injury to another. In addition, if the defendant entered a plea in the prior action, it is appropriate for the district court to consider any plea agreement in making its determination. That determination should be made in light of our holding here that the burglary of a non-dwelling is not a crime of violence *per se* under U.S.S.G. § 4B1.2(1)(ii).[11]

Accordingly, Marlon Wilson's sentence is VACATED, and the matter is REMANDED for resentencing.[12]

## IV. Conclusion

Based on the discussion above, the district court is AFFIRMED on all issues raised by the Appellants with the exception of classifying Marlon Wilson as a career offender for sentencing purposes. In light of our holding on that issue, Marlon Wilson's sentence is VACATED and this matter is REMANDED for resentencing.

11. The district court relied upon the Seventh Circuit's decision in *United States v. Davis,* 16 F.3d 212 (7th Cir.1994), which interpreted the same Illinois burglary statute at issue here, and held that attempted burglary was considered a violent felony within the meaning of the ACCA. After a review of Illinois case law, the *Davis* court was satisfied that a defendant must come within a "dangerous proximity to success" to be convicted for attempted burglary. Therefore it held attempted burglary constituted a violent felony for purposes of the ACCA. The decision in *Davis* does not compel a different result here. The key to that holding was the defendant's dangerous proximity to successful completion of the burglary which is clearly a violent felony under

the ACCA. *See* 18 U.S.C. § 924(e)(2)(B). The act to be completed in this case, burglary of a non-dwelling, is not a crime of violence *per se* for purposes of U.S.S.G. § 4B1.2.

12. The other issues raised by Marlon Wilson in his supplemental brief, (1) whether the government impermissibly vouched for the credibility of the government's witnesses or made improper remarks in closing arguments such that his right to fair trial or due process was violated; and (2) whether the district court abused its discretion by allowing evidence or testimony outside the scope of the conspiracy, are meritless.