**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Philander BUTLER, Defendant–
Appellant.**

**No. 99–6291.**

United States Court of Appeals,
Sixth Circuit.

Jan. 25, 2001.

Before DAUGHTREY and MOORE, Circuit Judges, and CLELAND,* District Judge.

PER CURIAM.

The defendant, Philander Butler, was convicted of aiding and abetting the possession of crack cocaine with the intent to distribute. On appeal, Butler argues that the evidence at trial did not sufficiently support his conviction and that the district court erred in admitting certain co-conspirator statements. For the reasons stated below, we find no reversible error and affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

A federal grand jury indicted appellant Philander Butler and co-defendant Reginald Wide for aiding and abetting, each by the other, the possession with the intent to distribute approximately 120 grams of co-

* The Hon. Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

caine base on or about January 6, 1999. Wide plea bargained on the eve of the trial and agreed to testify on behalf of the government. At Butler's trial, the parties elicited the following testimony and evidence.

Wide, who had been convicted of drug offenses in 1989 and 1995, testified that he had assisted Butler with drug sales before the commission of the instant offense. According to Wide, he and Butler stopped at a Texaco gas station approximately three days before January 6, 1999. At the gas station, Wide engaged in conversation with Clarence Alexander, an acquaintance of Wide's who was also a confidential informant for law enforcement authorities, while Butler pumped gas for his car. Wide testified that they exchanged pleasantries about two of their offspring, and then Alexander expressed an interest in finding a drug supplier who could sell him four ounces of cocaine. Alexander testified that they did not discuss the status of their children; rather, according to Alexander, the first thing they discussed was Alexander's request for four and one-half ounces of crack cocaine. Wide testified that after he informed Butler of Alexander's inquiry, he gave Alexander, who did not know Butler, his pager number and Butler's pager and cell phone numbers and instructed Alexander to call in two days. Wide stated that Alexander remained in his car during the entire conversation, but Alexander testified that they talked halfway between his and Butler's cars within earshot of Butler. Alexander said that he overheard Butler tell Wide that the requested quantity was not available, but that a deal would be completed when he received a supply of narcotics. On cross-examination, Butler's attorney compelled Wide to retract his testimony that he introduced Alexander to Butler on this occasion. After the conversation, Alexander called Shelby County Deputy Sheriff Reginald Reed to inform him about the prospects of a narcotics transaction with Butler and Wide.

Wide testified that after the discussion at the gas station, Alexander paged him the next day, January 4, 1999.[1] Wide returned Alexander's page, and Alexander inquired whether Butler could supply the requisite quantity of narcotics. After indicating that he did not know, Wide contacted Butler, who declined to consummate a transaction. Wide testified that he called Alexander again and informed him that Butler was not going to facilitate the deal at that time. Alexander testified that the day after the discussion at the gas station was January 6 and that Butler paged him on that day and inquired whether he still wanted the narcotics, to which Alexander responded affirmatively. Alexander also said that he did not talk to Wide at any time between the conversation at the gas station and the transaction mentioned in the indictment.

After talking to Butler on January 6, Alexander called Reed to inform him that Butler wanted to sell the requested narcotics. Reed agreed to the transaction, obtained $3,250 in cash from the Sheriff's Department, and picked up Alexander in an undercover law enforcement vehicle. Alexander testified that after he talked to Reed, he called Butler to find out the location, a cleaners, where they could conclude the transaction. Wide testified that Butler called him on January 6 and requested backup for a narcotics transaction. Wide said that Butler stopped at an apartment complex en route to the cleaners to

1. In contrast, Alexander's and Reed's testimony revealed that the conversation at the gas station occurred on January 5, 1999, rather than three days before the January 6 transaction mentioned in the indictment, as Wide testified.

"cook" powder cocaine into crack cocaine, although Butler's defense attorney elicited testimony that Wide had not informed authorities of this incident before trial. Wide testified that Butler informed him that he had talked to Alexander about completing the transaction. In addition, Wide stated that he, at Butler's instructions, informed Alexander of the location for the transaction.

Wide testified that once at the cleaners, Butler gave him the narcotics in a cup and some additional drugs in a bag and that subsequently Wide went to Reed and Alexander's vehicle and gave the cup of narcotics to Reed. According to Wide, Alexander gave the money to him, and then, at the signal of Reed, all four participants were arrested by authorities. When officers searched Wide, they found marijuana and 10 to 15 rocks of crack cocaine in his right front pocket. Wide testified that the crack cocaine found in his pocket did not belong to him and that Butler had given him the crack cocaine earlier in the day. The officers did not find any narcotics on Butler or in his vehicle. However, a jailhouse informant testified that Butler admitted in jail that he had arranged the narcotics transaction, and there was evidence that Butler attempted to recruit other jail inmates to testify that the narcotics belonged to Wide.

The jury found Butler guilty of the charge in the indictment. The district court sentenced Butler to life imprisonment and ten years supervised release. Butler now appeals his conviction.

## DISCUSSION

### A. Sufficiency of Evidence

We review challenges to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Avery*, 128 F.3d 966, 971 (6th Cir.1997). "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir.1986) (citation omitted). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.*

The indictment against Butler encumbered the government with the burden of proving that Butler had actual or constructive possession of the narcotics, or that Butler aided and abetted Wide in the effort to distribute the crack cocaine. A defendant exercises actual possession over drugs when he or she has immediate control or power over the items, and constructive possession occurs when a defendant has the power and intention to exercise dominion and control over the narcotics. *See United States v. Murphy*, 107 F.3d 1199, 1207–08 (6th Cir.1997) (citing *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973)). " 'To be found guilty of the crime of aiding and abetting a criminal venture, a defendant must associate himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed.' " *United States v. Quinn*, 901 F.2d 522, 530 n. 6 (6th Cir. 1990) (quoting *United States v. Evans*, 883 F.2d 496, 501 (6th Cir.1989)).

Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to support Butler's conviction. Wide's and Alexander's testimonies depicted a discussion at the gas station that involved Butler's participation in a narcotics transaction. Wide testified that Butler "cooked" the crack cocaine and gave him the requisite quantity to deliver to Alexander and Reed. Alex-

ander testified that he conversed with Butler about the transaction and that Butler agreed to the deal. A jailhouse informant testified that Butler confessed to organizing the narcotics transaction and attempted to entice other inmates to testify that the drugs belonged to Wide. Butler argues that he went to the cleaners to drop off some clothing and pick up some other pieces, and he provided evidence that he was a customer at the establishment and that he took soiled clothes with him when he accompanied Wide to the transaction. In light of the other evidence, however, the jury obviously rejected Butler's argument that he was present at the cleaners simply to drop off some clothing—not surprising, given the fact that the evidence at trial failed to reveal any effort by Butler to enter the establishment during Wide's delivery of the narcotics to Alexander and Reed.

■ In essence, Butler argues that the inconsistencies and confusion in the trial testimony rendered the evidence insufficiently capable of producing a guilty verdict. While there were obvious inconsistencies in the evidence, particularly as to the divergence between Alexander's and Wide's testimonies, those inconsistencies affected witness credibility rather than legal insufficiency of the evidence. As we have repeatedly noted, "[c]hallenges to the credibility of a witness are not ... challenges to the sufficiency of the evidence, but instead are challenges to the quality of the government's evidence[,]" and " 'issues of witness credibility are for the jury.' " *United States v. Latouf,* 132 F.3d 320, 330 (6th Cir.1997) (citing and quoting *United States v. Farley,* 2 F.3d 645, 652 (6th Cir. 1993)). We therefore find no basis for reversal on this ground.

### B. Co–Conspirator Hearsay

■ Butler argues that he suffered prejudice from the district court's failure to apply the appropriate test to admit extrajudicial statements under the co-conspirator exception to the hearsay rule. Before a district court can admit co-conspirator statements, three factors must be established: (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator's statements were made in furtherance of the conspiracy. *United States v. Wilson,* 168 F.3d 916, 920 (6th Cir.1999) (citations omitted). Since Butler did not object during the trial to the admission of any co-conspirator statements, we review the admission of such evidence for plain error. *See id.*

■ Butler argues, without citing to any page in the record, that Wide testified at trial to many co-conspirator statements for which the district court did not perform the requisite certification. We find no error, however. Butler and Wide were the only two conspirators in this case. Federal Rule of Evidence 801(d)(2)(E) contemplates a situation in which a witness testifies as to statements by a third-party co-conspirator/declarant, not by the defendant against whom the statements are offered. Wide testified as to Butler's statements, which constituted admissions under Rule 801(d)(2)(A) and/or (B). Wide did not repeat any statements by a third-party co-conspirator—indeed, he could not, since none existed in this case. Hence, the district court did not err in permitting the testimony in question.

For the reasons set out above, we AFFIRM the judgment of the district court.