**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0395n.06**

**07-5414**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>**Jun 02, 2009**<br>LEONARD GREEN, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DELMAN DAVIS, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, RYAN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Delman Davis challenges his conviction for conspiring to distribute cocaine. We affirm.

I.

A federal grand jury indicted Davis for conspiring with eight other individuals to possess and distribute more than five kilograms of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. A jury convicted him of conspiring to distribute a somewhat smaller amount: between 500 grams and five kilograms of cocaine. After the district court denied Davis's motion to acquit, it sentenced him to a 262-month prison term.

II.


A.


Davis first argues that the district court erred in permitting the government to introduce an out-of-court statement under the co-conspirator exception to the hearsay rule. Fed. R. Evid. 801(d)(2)(E). We give fresh review to the district court's legal conclusions regarding the admissibility of evidence and clear-error review to its underlying factual conclusions. *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008).

Richard Moselsky, a witness for the prosecution, testified that he sold drugs with some of the co-conspirators indicted with Davis. When asked if he "ha[d] any involvement with Mr. Davis," he testified:

> On one occasion . . . [Mathes] called me up and told me to go over to [Davis's] house because [Butler] had some cocaine for me over there . . . and when I got there, [Davis's] apartment, [Davis and Butler were] breaking up a kilo of cocaine.

JA 549. Davis contends that the court should not have admitted Mathes's hearsay statement about the presence of cocaine at Davis's home.

A co-conspirator's statement is not hearsay if it was made "during the course and in furtherance of [a] conspiracy" with the defendant. Fed R. Evid. 801(d)(2)(E); *see United States v. Wilson*, 168 F.3d 916, 920–21 (6th Cir. 1999). Ample evidence showed that Davis and Mathes were part of the same conspiracy. Moselsky testified that he had "worked out a deal" with Mathes in

which Moselsky would acquire cocaine that the two would divide and sell. JA 548. Moselsky's testimony also linked Mathes and Davis: In his role as a drug buyer, Moselksy had acquired drugs from Butler, who was working with Davis. And Mathes's statement itself—instructing Moselsky to "go over to [Davis's] house because [Butler] ha[s] some cocaine . . . over there," JA 549—confirmed the conspiracy's existence and goals. *See Wilson*, 168 F.3d at 921 (noting that, in determining whether a statement falls within the co-conspirator hearsay exception, a court can consider the statement in determining whether a conspiracy existed). Ample evidence, in short, supported the district court's decision to admit the evidence because (1) a "conspiracy existed," (2) Davis "was a member of the conspiracy," and (3) Mathes's statement was "made in furtherance of the conspiracy." *Id.* at 920.

Davis's arguments to the contrary are wrong. He first questions whether a preponderance of the evidence shows that he "had any knowledge of the conspiracy." Appellant's Br. at 13. But surely the fact that he and Butler were "breaking up a kilo of cocaine," JA 549, part of which Butler provided to Moselsky, suffices to show that he knew he was conspiring with others to distribute drugs. He points to no evidence at any rate that would defeat this natural inference. Also underwhelming is his suggestion that "the conspiracy [was] over" before the statements were made. Appellant's Br. at 13. Moselsky, keep in mind, arrived to pick up his portion of cocaine from Davis *after* Mathes made the statement at issue.

B.

Davis next contends that the evidence against him does not suffice to support his drug-conspiracy conviction. To the extent he presses the point that the evidence was insufficient because it contained "inadmissible hearsay," Appellant's Br. at 16, that argument merely reprises what we have just considered, and rejected. In addition to this retreaded argument, Davis maintains that the prosecution's evidence fell short because it consisted mostly of the "uncorroborated" testimony of multiple drug co-conspirators. Appellant's Br. at 16. But if multiple co-conspirators testified about his role in the conspiracy, the evidence was hardly "uncorroborated." To the extent he means to challenge the bona fides of each of these co-conspirators, that is a matter of credibility that falls well within the province of the jury to accept or reject. As we have said in one way or another on too many occasions to count, we "make all reasonable inferences and credibility choices in support of the jury's verdict" when considering a sufficiency challenge. *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006). And in this case, several witnesses testified that Davis helped them buy and sell large quantities of cocaine. *See* JA 164 (identifying Davis as a drug purchaser), 224–25 (relating that he sold Davis 25-30 kilograms of cocaine), 423 (stating that he received money from Davis in exchange for a previously delivered kilogram of cocaine), 549–50 (stating that Davis "[broke] up a kilo of cocaine" with Butler), and Davis himself admitted to an officer that he had collected money for drug dealers. A reasonable jury could conclude that Davis conspired to distribute cocaine. 21 U.S.C. §§ 841(a)(1), 846.

C.

Davis, finally, argues that his conviction must be overturned because the district judge failed to ask him whether he voluntarily declined to testify. But Davis gave no indication to the trial court that he wished to testify, so there was no error: Although a defendant must waive his right to testify "knowing[ly] and intelligent[ly]," *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007), a court may presume that a knowing and intelligent waiver has occurred if the defendant "[does] nothing to alert the trial court of his desire to testify," *id.* at 909. Absent some suggestion that the defendant wishes to testify, the trial court has no duty to ask whether the waiver is voluntary. *Id.*; *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

III.

For these reasons, we affirm.