05-5462-cr
USA v. Brown

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2007

(Argued: October 17, 2007      Decided: January 30, 2008)


Docket No. 05-5462-cr

_____

UNITED STATES OF AMERICA,

                                        Appellee,

                        - v. -

SEAN BROWN,

                                        Defendant-Appellant.
_____

Before:  KEARSE and HALL, Circuit Judges, and RAKOFF,

                District Judge*.

        Appeal from a judgment of the United States District Court

for the Eastern District of New York, Sterling Johnson, Jr., Judge,

following a remand pursuant to United States v. Crosby, 397 F.3d 103

(2d Cir. 2005), resentencing defendant to 84 months' imprisonment in

light of his prior state-law conviction of third-degree burglary,

considered as a crime of violence, and his possession of firearms

whose serial numbers had been obliterated.

        Affirmed; remanded for clerical correction of judgment.

_____

*      Honorable Jed S. Rakoff, of the United States District Court
        for the Southern District of New York, sitting by
        designation.

ADAM ABENSOHN, Assistant United States Attorney, Brooklyn, New York (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, Brooklyn, New York, on the brief), for Appellee.

MICHAEL S. POLLOK, New York, New York, filed a brief for Defendant-Appellant.

KEARSE, Circuit Judge:

Defendant Sean Brown, who pleaded guilty in the United States District Court for the Eastern District of New York before Sterling Johnson, Jr., Judge, to one count of unlicensed gun dealing, in violation of 18 U.S.C. § 922(a)(1)(A), and seven counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), appeals from a judgment entered following a remand pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) ("Crosby"), sentencing him under the advisory Sentencing Guidelines principally to 84 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, Brown contends that the district court erred in increasing his offense level on the grounds (a) that on some of the firearms he possessed the serial numbers had been obliterated, and (b) that his prior crime of third-degree burglary constituted a crime of violence. He also contends that his sentence is unreasonable on the grounds that the district court (a) failed to consider, inter alia, some of the sentencing factors set forth in 18 U.S.C. § 3553(a), and (b) reimposed a sentence that the court had originally indicated was inappropriate.

For the reasons that follow, we find no basis for reversal.

I.  BACKGROUND

The events leading to this prosecution are not in dispute. In a series of transactions in late 2002 and early 2003, Brown sold seven guns to undercover police officers. On two of those guns, the serial numbers were obliterated. Brown was indicted on, inter alia, one count of unlicensed gun dealing, in violation of 18 U.S.C. § 922(a)(1)(A), and seven counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Brown pleaded guilty to those eight counts. The indictment also charged him with two counts of knowingly possessing firearms with obliterated serial numbers, in violation of 18 U.S.C. § 922(k); the court refused to accept a plea of guilty to those two counts because Brown maintained that he did not know the serial numbers on the guns were obliterated.

A.  The Guidelines Calculations

A presentence report ("PSR") prepared on Brown initially calculated that his recommended range of imprisonment under the 2003 version of the Guidelines ("2003 Guidelines"), which was applied to him, was 57-71 months. The PSR described Brown's criminal record, which included three convictions for felonies under New York State ("State") law: a 1989 conviction for criminal possession of a weapon, a 1991 conviction for attempted burglary, and a 1993 conviction for burglary. As to the 1993 burglary conviction, the

PSR stated that, according to his State presentence report, Brown had explained to a State parole officer that someone had owed him money and that, when Brown had not received payment for several months, he broke into the home of his debtor's mother and stole her jewelry.

The above three convictions gave Brown nine criminal history points and placed him in criminal history category ("CHC") IV. The PSR calculated Brown's base offense level as 20 on the premise that he had committed the instant offenses after having been convicted of one prior crime of violence, see 2003 Guidelines § 2K2.1(a)(4)(A), to wit, the attempted burglary of which he was convicted in 1991. See also id. § 2K2.1 Application Note 5 (stating, in pertinent part, that "[f]or purposes of this guideline . . . '[c]rime of violence' has the meaning given that term in § 4B1.2(a)"). The PSR also stated that at least two of the firearms sold by Brown had obliterated serial numbers. After a two-step increase for possession of firearms with obliterated serial numbers, see id. § 2K2.1(b)(4), a two-step increase on the ground that Brown's offenses involved seven firearms, see id. § 2K2.1(b)(1), and a three-step decrease for acceptance of responsibility, see id. § 3E1.1(b), Brown's total offense level was 21.

However, the PSR was subsequently amended to increase that level. An addendum stated that a closer examination of New York statutes and this Court's decision in United States v. Andrello, 9 F.3d 247 (2d Cir. 1993) ("Andrello"), cert. denied, 510 U.S. 1137 (1994), revealed that Brown's 1993 burglary was a crime of violence, and hence that Brown's record included two crimes of violence rather

-4-

than one as stated in the original PSR. The base offense level of a defendant with two such prior convictions was 24. See 2003 Guidelines § 2K2.1(a)(2). Thus, the amended PSR concluded that, with the other adjustments remaining the same, Brown's total offense level was 25. That offense level, combined with a CHC of IV, resulted in a Guidelines-recommended imprisonment range of 84-105 months.

B.  The March 2004 Sentencing

Brown made no objections to the statements or calculations in the PSR, either as originally issued or as amended, except with respect to the recommended two-step increase in offense level for possession of firearms with obliterated serial numbers. He did not suggest that the serial numbers were not in fact obliterated; rather, he contended that the enhancement was inappropriate because he did not know they were obliterated, and because the district court had refused to accept his plea of guilty to the § 922(k) charges that he had "knowingly" possessed firearms with obliterated serial numbers. Brown argued that his Guidelines imprisonment range, without that enhancement, should be 70 to 87 months. (See, e.g., Sentencing Transcript March 26, 2004 ("2004 S.Tr."), at 7.)

The government responded that while 18 U.S.C. § 922(k) itself applies only if the defendant had knowledge that a firearm's serial number was removed, altered, or obliterated, the pertinent Guidelines section stated simply, "[i]f any firearm . . . had an altered or obliterated serial number, increase by **2** levels," 2003 Guidelines § 2K2.1(b)(4). The government pointed out that the

commentary to that guideline provided that the enhancement under subsection (b)(4) for a "[f]irearm with altered or obliterated serial number applies whether or not the defendant knew or had reason to believe that the firearm had an altered or obliterated serial number." (2004 S.Tr. at 6 (referring to 2003 Guidelines § 2K2.1 Application Note 19).) Thus, the guideline had no scienter requirement.

Judge Johnson addressed both sides' positions, stating as follows:

> Problem I have with the government's position is the fact that the defendant had pled to eight counts for aggregating [sic] circumstances, the government wants to charge him basically with ten [sic] guns, two which he said he didn't know the guns were -- the serial numbers were obliterated and while according to the law the government has the right to do that, it is not the right thing to do.
>
> The government's calculations with respect to their position is 84 to 105 months. The defendant's position is that it should be 70 to 87 months. The problem that I have with the defendant's position is that he is in a criminal category history four. It is not that this is his first contact with the criminal justice system.
>
> If he were not a criminal category history four, notwithstanding Sentencing Guidelines as related by the government, I would sentence him to 70 months. However, I'm going to sentence the defendant to the custody of the Attorney General or his duly authorized representative for a period of 84 months.

(2004 S.Tr. at 20-21.)

Judgment was entered on March 31, 2004, and Brown timely appealed. On appeal, Brown was represented by new counsel, and his new attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and moved to withdraw as counsel, stating that

- 6 -

Brown had no nonfrivolous issues for appeal. The government moved for summary affirmance. In January 2005, the United States Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), holding that the Guidelines are not mandatory but advisory. Thereafter, this Court granted Brown's new attorney's motion to withdraw; but we denied the government's motion for summary affirmance, instructed that new counsel be appointed for Brown, and, without reaching any merits questions, summarily remanded the case to the district court, in accordance with Crosby, 397 F.3d at 119, to permit the court to determine whether its original sentence would have been nontrivially different under the post-Booker advisory-Guidelines regime.

## C. The Sentencing on Remand

On remand, Judge Johnson decided to resentence Brown; the attorney who had represented Brown throughout virtually all of the prior district court proceedings was appointed to represent him. Thereafter, the parties submitted written arguments and the court held a hearing, attended by counsel and Brown. Brown's attorney reiterated his prior argument that notwithstanding the fact that the Guidelines § 2K2.1(b)(4) enhancement was, on its face, applicable even if the defendant did not know the serial numbers were obliterated, Brown should not have his punishment increased on account of a fact that he denied knowing. (See, e.g., Sentencing Transcript September 23, 2005 ("2005 S.Tr."), at 5 ("Even though it is something the defendant doesn't have to know, he still has not pled guilty to that.").)

Brown's attorney also advanced a new contention, saying he

had "missed it the first time around," arguing that Brown's 1993 felony of third-degree burglary should not have been considered a crime of violence. (2005 S.Tr. at 3.) He argued that that burglary conviction resulted from Brown's plea of guilty to burglary of a "building"; that burglary of a "building" did not fall within the Guidelines definition of crime of violence, which referred to burglary of a "dwelling," see Guidelines 2003 § 4B1.2(a); and that that conviction thus could not justify a base offense level of 24 under § 2K2.1(a)(2). (2005 S.Tr. at 4.) Brown's attorney pointed out that if the 1993 burglary were not treated as a crime of violence and the enhancement for the obliterated serial numbers were eliminated, Brown's advisory Guidelines-recommended imprisonment range would be 46-57 months. (See 2005 S.Tr. at 7.)

The government opposed Brown's contentions, citing this Court's decision in Andrello, 9 F.3d 247, and the Guidelines themselves. The Assistant United States Attorney ("AUSA") argued that Andrello "deem[ed] burglary in the third degree under New York law . . . to constitute [a] crime[] of violence" (2005 S.Tr. at 8) and hence foreclosed Brown's contention that his 1993 burglary should not be considered a crime of violence under § 4B1.2(a). The AUSA also reiterated the government's position that Guidelines § 2K2.1(b)(4), calling for an offense-level increase for possession of a gun with an obliterated serial number, is "a strict liability provision" that did not require knowledge (2005 S.Tr. at 8).

After hearing counsel's arguments and a statement from Brown, the district court resentenced Brown under the post-Booker sentencing regime and imposed the same 84-month term of imprisonment

it had imposed originally. The court stated as follows:

> The sentencing landscape has been changed by Booker
> . . . .
>
> . . . Crosby tells us that the court must consider the guidelines because they are advisory and then look at the factors in 3553(a) and if you look at the factors in 3553(a)(2)(A), to reflect the seriousness of the offense and to promote respect for the law and to provide just punishment for an offense and in this situation the defendant is a prior felon who was selling a number of firearms to undercover police officers . . . .
>
> . . . .
>
> . . . And then 3553(a)(2)(B) says to afford adequate deterrence to criminal conduct. This defendant is not unfamiliar with the criminal justice system. He has numerous run-ins with the criminal justice system and there are at least two felonies that he's been convicted of; is that correct?
>
> MR. ABENSOHN [the AUSA]: I believe there are three prior felonies but two qualify as crimes of violence for purposes of the statute, Your Honor.
>
> THE COURT: And 3553(a)(2)(C) says to protect the public from further crimes of the defendant and this defendant on one instance had escaped custody for a state conviction and while in that escape status committed another felony . . . .
>
> . . . .
>
> . . . Well, I have taken all of this into consideration and I have looked at the guidelines and I am going to impose the same sentence that I imposed before. I sentence the defendant to the custody of the Attorney General or his duly authorized representative for a period of 84 months to run concurrent on each count . . . .

(2005 S.Tr. at 10-12.)  Judgment was entered, and this appeal followed.

## II.  DISCUSSION

On this appeal, Brown contends principally (a) that his 1993 burglary should not have been considered a crime of violence, (b) that his advisory-Guidelines offense level should not have been increased on account of the guns' obliterated serial numbers, and (c) that his sentence is unreasonable because the district court did not consider some of the § 3553(a) sentencing factors and because the judge reimposed the same 84-month sentence despite having, according to Brown, "specifically stated at the initial sentencing that he would have sentenced [Brown] to 70 months if he had the choice" (Brown brief on appeal at 10). For the reasons that follow, we find no merit in his contentions.

A. Standard of Review

Following the Supreme Court's decision in Booker, holding that the Guidelines are advisory rather than mandatory, a sentencing court must determine an appropriate sentence by considering the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Booker, 543 U.S. at 259-60; Crosby, 397 F.3d at 111. Since those factors include the sentencing ranges established for "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines" issued by the Sentencing Commission, 18 U.S.C. § 3553(a)(4)(A), the court is required to make a "determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges," despite the fact that such ranges are now advisory. Crosby, 397 F.3d at 113; see,

- 10 -

e.g., Gall v. United States, 128 S. Ct. 586, 596 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . [T]he Guidelines should be the starting point and the initial benchmark."); United States v. Rattoballi, 452 F.3d 127, 131-32 (2d Cir. 2006); United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005). Other § 3553(a) factors that the sentencing court must consider include "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), "the history and characteristics of the defendant," id., and the need for the sentence that is imposed to, inter alia, "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment for the offense[,] . . . afford adequate deterrence to criminal conduct[, and] . . . protect the public from further crimes of the defendant," id. §§ 3553(a)(2)(A), (B), and (C).

In the post-Booker era, we review sentences for reasonableness, see Booker, 543 U.S. at 261-62, a standard that is "akin to review for abuse of discretion," United States v. Fernandez, 443 F.3d 19, 27 (2d Cir.) ("Fernandez"), cert. denied, 127 S. Ct. 192 (2006); see, e.g., Gall, 128 S. Ct. at 594 ("[T]he Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."); Crosby, 397 F.3d at 114. "Reasonableness review involves consideration of both the length of the sentence (substantive reasonableness) and the procedures used to arrive at the sentence (procedural reasonableness)." United States v. Canova, 485 F.3d 674, 679 (2d Cir. 2007).

As to substantive reasonableness, the "numerous [§ 3553(a)] factors that guide sentencing . . . . guide appellate courts . . . in determining whether a sentence is unreasonable." Booker, 543 U.S. at 261. Thus, in reviewing a sentence for "substantive reasonableness, . . . we consider whether the length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. § 3553(a)." United States v. Rattoballi, 452 F.3d at 132. In reviewing for procedural reasonableness, we consider, inter alia, whether the sentencing judge treated the Guidelines as advisory and whether he considered the Guidelines and all of the other factors listed in § 3553(a). See, e.g., id. at 131-32. A sentence would be procedurally unreasonable if, for example, the sentencing judge misinterpreted a relevant guideline or failed to consider the factors listed in § 3553(a).

We have not insisted that sentencing judges slavishly follow any particular formula in considering the § 3553(a) factors. See, e.g., Crosby, 397 F.3d at 113 ("[W]e will no more require 'robotic incantations' by district judges [post-Booker] than we did when the Guidelines were mandatory."). Instead,

> we presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors. . . . [A]nd we will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced.

Fernandez, 443 F.3d at 30. "As long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates

misunderstanding about such materials or misperception about their relevance, we will accept that the requisite consideration has occurred." United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005).

B. Third-Degree Burglary as a Crime of Violence

Brown contends that the district court committed procedural error by interpreting § 4B1.2(a), the Guidelines definition of "crime of violence," as encompassing his 1993 New York felony of third-degree burglary. We conclude, in light of (a) the residual clause at the end of the § 4B1.2(a) definition, (b) the identically worded residual clause in 18 U.S.C. § 924(e)'s definition of "violent felony," (c) the interpretation of § 924(e) by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990), and this Court in Andrello, 9 F.3d 247, with respect to the nature of burglaries, (d) this Court's parallel constructions of § 4B1.2(a)'s concept of "crime of violence" and § 924(e)'s concept of "violent felony" in analyzing non-burglary felonies, and (e) the absence of a relevant statement by the Sentencing Commission interpreting § 4B1.2(a)'s residual clause, that the district court did not misinterpret the Guidelines definition.

The Guidelines definition of "crime of violence" provided that that term

> means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

- 13 -

(2) <u>is burglary of a dwelling</u>, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another.</u>

2003 Guidelines § 4B1.2(a) (emphases added); <u>see also</u> Guidelines § 4B1.2(a) (2007) (same). In determining whether a given crime fits within the definition of the relevant predicate offenses, we take a "categorical" approach; that is, we generally look only to the statutory definition of the prior offense of conviction rather than to the underlying facts of that offense. <u>Taylor</u>, 495 U.S. at 600.

Under New York law, "[a] person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y. Penal Law § 140.20 (McKinney 1999). Plainly, "building[s]" include structures other than "dwelling[s]"; hence, the New York crime of third-degree burglary does not categorically fit within the first clause of § 4B1.2(a)(2)'s definition of crime of violence, <u>i.e.</u>, "burglary of a dwelling." The question thus is whether third-degree burglary fits within the last clause of the § 4B1.2(a)(2) definition, <u>i.e.</u>, the residual clause encompassing any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

Most of our Sister Circuits dealing with state laws defining crimes of burglary have struggled to determine whether interpreting § 4B1.2(a)(2)'s residual "otherwise involves" clause to include burglary of a building that is not a dwelling is foreclosed by that definition's earlier specific mention of "burglary <u>of a</u>

- 14 -

dwelling" (emphasis added). Some Circuits have answered this question in the affirmative, concluding that only burglaries of dwellings are to be considered crimes of violence under § 4B1.2(a)(2). See, e.g., United States v. Harrison, 58 F.3d 115, 119 (4th Cir. 1995); United States v. Spell, 44 F.3d 936, 938-39 (11th Cir. 1995); United States v. Smith, 10 F.3d 724, 733 (10th Cir. 1993). Others have concluded that burglary of a commercial building involves conduct that presents a serious potential risk of physical injury to another, and hence burglary of such a non-dwelling is also a crime of violence, falling within the scope of § 4B1.2(a)(2)'s last clause. See, e.g., United States v. Hascall, 76 F.3d 902, 906 (8th Cir.) ("Hascall"), cert. denied, 519 U.S. 948 (1996); United States v. Fiore, 983 F.2d 1, 4-5 (1st Cir. 1992), cert. denied, 507 U.S. 1024 (1993). Still other Circuits have ruled that whether burglary of a building other than a dwelling should be considered a crime of violence within the meaning of the residual clause of § 4B1.2(a)(2) depends on the circumstances of the crime. See, e.g., United States v. Matthews, 374 F.3d 872, 880 (9th Cir. 2004); United States v. Hoults, 240 F.3d 647, 651-52 (7th Cir. 2001); United States v. Wilson, 168 F.3d 916, 928-29 (6th Cir. 1999) ("Wilson"); United States v. Jackson, 22 F.3d 583, 585 (5th Cir. 1994).

The Sentencing Commission, for its part, has not since 1989 clarified the intended reach of § 4B1.2's definition of crime of violence. As the Sixth Circuit noted in Wilson,

> [t]he Sentencing Commission has considered and
> failed to adopt various amendments to section 4B1.2
> over the years which would address the question of

- 15 -

whether "burglary of a dwelling" should be interpreted broadly or narrowly. For example, in December 1992, the Commission considered a proposed amendment to the definition of a crime of violence which would have amended that section "to include all burglaries, and not just burglaries of a dwelling." 57 Fed.Reg. 62832, 62856-57 (proposed Dec. 31, 1992). This proposed change was rejected. Subsequently, in 1993, another proposed amendment sought to add language to application note 2 which would have clarified that, "The term 'crime of violence' includes burglary of a dwelling (including any adjacent outbuilding considered part of the dwelling). It does not include other kinds of burglary." 58 Fed.Reg. 67522, 67533 (proposed December 21, 1993). The Commission also failed to adopt this approach.

168 F.3d at 928 (emphases added). The Wilson court concluded: "'[w]e fail to see how the Commission's inconsistent path supports a particular view on this issue.'" Id. (quoting Hascall, 76 F.3d at 906).

We note that at one time the Sentencing Commission had taken the position that the Guidelines definition of crime of violence did not include burglaries of non-dwellings. The original Guidelines defined crime of violence by adopting the definition of that term as it appeared in 18 U.S.C. § 16. Guidelines § 4B1.2(1) (1987) (renumbered § 4B1.2(a) in 1997, Guidelines Appendix C, Vol. I, Amendment 568, at 526 (eff. Nov. 1, 1997)); see 18 U.S.C. § 16 (defining crime of violence to encompass any "felony . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). The commentary to the original § 4B1.2 stated that the Commission interpreted the crime-of-violence definition to mean that "[c]onviction for burglary of a dwelling would be covered" but that "conviction for burglary of other

- 16 -

structures would not be covered." Guidelines § 4B1.2 Application Note 1 (1987) (emphasis added). However, this stated interpretation was short-lived.

In 1989, the Commission amended § 4B1.2 "to clarify" the definition of crime of violence. Guidelines Appendix C, Vol. I, Amendment 268 (eff. Nov. 1, 1989) ("Amendment 268"), at 133. The reference to 18 U.S.C. § 16 was deleted; the clarified Guidelines definition used the § 4B1.2(a) wording quoted in the second paragraph of this Part II.B. (wording that has remained the same through 2007), i.e., listing, inter alia, burglary of a dwelling and any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another," Amendment 268, at 131-33. The original commentary was replaced by commentary that continued to note that crimes of violence include burglary of a dwelling; but the statement that "burglary of other structures would not be covered" was omitted. Id. at 132. No subsequent version of § 4B1.2 or of its commentary has stated that burglaries of non-dwelling buildings are excluded from the Guidelines definition of crime of violence.

This Court has not previously decided whether the New York crime of third-degree burglary is a "crime of violence" within the definition set out in Guidelines § 4B1.2(a). In Andrello, 9 F.3d at 249-50, however, we held that attempted third-degree burglary under New York law is a "violent felony" within the meaning of 18 U.S.C. § 924(e), a section that provides enhanced penalties for a previously convicted felon who is convicted of possessing a gun in violation of 18 U.S.C. § 922(g) and who has "three previous

- 17 -

convictions . . . for a violent felony," 18 U.S.C. § 924(e)(1). The term "violent felony" as used in § 924(e) includes a felony that

> is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

<u>Id</u>. § 924(e)(2)(B)(ii) (emphasis added). Although that definition does not specify that violent felonies include attempts, we concluded in <u>Andrello</u> that attempted third-degree burglary under New York law is a violent felony under § 924(e)(2)(B)(ii)'s residual clause. In reaching this conclusion, we were guided by the Supreme Court's decision in <u>Taylor</u>, 495 U.S. 575, with regard to burglary itself.

As discussed in <u>Taylor</u>, the legislative history of § 924(e)'s sentence-enhancing provisions repeatedly revealed Congress's view that burglary is an offense that inherently poses a risk of physical injury to victims, bystanders, and law enforcement personnel. For example, the <u>Taylor</u> Court noted that testimony at congressional hearings focusing on burglary pointed out that

> even though injury is not an element of the offense, <u>it is a potentially very dangerous offense</u>, because when you take your very typical residential burglary or <u>even your professional commercial burglary</u>, there is a very serious danger to people who might be inadvertently found on the premises.

<u>Taylor</u>, 495 U.S. at 585 (internal quotation marks omitted) (emphases added). The Court noted that

> [t]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.

<u>Taylor</u>, 495 U.S. at 588. The legislative history

indicate[d] that Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons.

Id. (emphases added).

Consistent with these views of the nature of burglary, the Supreme Court has most recently ruled that attempted burglary of a "structure," see Fla. Stat. § 810.02(1) (1993); id. § 777.04(1) (attempts), is a violent felony within the meaning of § 924(e) because it involves conduct that "presents a serious potential risk of injury to another," James v. United States, 127 S. Ct. 1586, 1597-98 (2007). The James Court noted that the

main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party--whether an occupant, a police officer, or a bystander . . . .

Id. at 1594.

In Andrello, this Court, noting Taylor's description of Congress's view of burglary as reflected in the legislative history of § 924(e), concluded that attempted third-degree burglary under New York law is a violent felony within the meaning of the residual clause of § 924(e)(2)(B)(ii), i.e., that the attempt involves conduct that presents a serious potential risk of physical injury to another. See 9 F.3d at 249-50. The major premise leading to that conclusion was that "burglary itself is a crime that inherently involves a risk of personal injury," id. at 249.

Andrello's major premise is instructive for purposes of the present case because the residual clause of the

§ 924(e)(2)(B)(ii) definition of "violent felony" and the residual clause of the Guidelines § 4B1.2(a)(2) definition of "crime of violence" are identical; both definitions end with the inclusion of any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Indeed, the Guidelines § 4B1.2 "'definition of crime of violence'" was "'derived from 18 U.S.C. § 924(e).'" United States v. Palmer, 68 F.3d 52, 55 (2d Cir. 1995) ("Palmer") (quoting Amendment 268, at 133).

Given the identical language of the two definitions' residual clauses, this Court, in determining whether a defendant's prior non-burglary felonies were violent felonies within the meaning of § 924(e), has been guided by cases interpreting Guidelines § 4B1.2(a)(2). See United States v. Jackson, 301 F.3d 59, 62 (2d Cir. 2002) ("We . . . look to cases construing U.S.S.G. § 4B1.2 (career offender), which defines a 'crime of violence' in wording substantially identical to the definition of 'violent felony' under § 924(e)."), cert. denied, 539 U.S. 952 (2003). And conversely, in determining whether a defendant's prior non-burglary felonies were crimes of violence within the meaning of Guidelines § 4B1.2(a), we have been guided by cases interpreting § 924(e). See, e.g., Palmer, 68 F.3d at 55 ("The term 'violent felony'" is "defined by § 924(e)(2)(B) in terms that are substantially identical to the definition of 'crime of violence' in USSG § 4B1.2(1).").

> Given the substantial similarity between the . . . definition of "violent felony[]" [in] 18 U.S.C. § 924(e)(2)(B), and the Sentencing Commission's definition of "crime of violence," U.S.S.G. § 4B1.2(1), authority interpreting one phrase frequently is found to be persuasive in interpreting the other phrase.

Palmer, 68 F.3d at 55 (quoting United States v. Winter, 22 F.3d 15, 18 n.3 (1st Cir. 1994)).

Such analytical cross-referencing between Guidelines § 4B1.2(a)(2) and 18 U.S.C. § 924(e)(2)(B)(ii) rests not only on the fact that the residual clauses of the two provisions are identical, but also on the recognition that the inquiry into whether a particular type of conduct has the potential to present a serious risk of physical injury to another person focuses on the nature of the conduct. The inherent nature of the conduct is not dependent on the location of a provision prescribing punishment for that conduct. And where the language of two such provisions is identical, we cannot conclude that those provisions have disparate applicability to a type of conduct that inherently involves the risk specified in both provisions.

Having reasoned in Andrello that attempted third-degree burglary of "a building" falls within the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) because third-degree "burglary itself is a crime that inherently involves a risk of personal injury," 9 F.3d at 249, we can only conclude that third-degree burglary inherently poses that same risk within the meaning of the identically worded residual clause of Guidelines § 4B1.2(a)(2).

Accordingly, we conclude that in ruling that Brown's 1993 third-degree burglary in violation of New York law was a crime of violence within the meaning of the last clause of Guidelines § 4B1.2(a)(2), and thus that his record included two crimes of violence, making his base offense level 24, the district court did not misinterpret the Guidelines.

C.   The Enhancement for Obliterated Serial Numbers

Brown's contention that the obliterated-serial-numbers enhancement should not have been applied to him because he did not know the numbers were obliterated does not warrant extended discussion.  The Guidelines provided for a two-level enhancement "[i]f any firearm . . . had an altered or obliterated serial number."  2003 Guidelines § 2K2.1(b)(4).  The commentary to § 2K2.1 provided that the enhancement applied "whether or not the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number."  2003 Guidelines § 2K2.1 Application Note 19.  Thus, in United States v. Williams, 49 F.3d 92 (2d Cir. 1995), we upheld the strict-liability nature of this provision, stating that while "18 U.S.C. § 922(k), which criminalizes the possession of a firearm with an obliterated serial number, contains a scienter requirement, . . . Congress has not required . . . that the § 2K2.1(b)(4) sentencing enhancement contain a scienter requirement."  Id. at 93.  We noted that the strict-liability nature of the enhancement "reasonably imposes the burden upon a felon who illegally possesses a firearm to ensure that the serial number is not obliterated," and such an obligation does not violate due process.  Id.

To the extent that Brown may also be arguing that the § 2K2.1(b)(4) enhancement could not be applied to him because the fact that serial numbers were obliterated was not proven by the government beyond a reasonable doubt to a jury (see Brown brief on appeal at 17-18), his argument fares no better.  "Judicial authority to find facts relevant to sentencing by a preponderance of the

evidence survives Booker." United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005). Here, the PSR stated unequivocally that on at least two of the guns sold by Brown, the serial numbers were obliterated; and Brown made no objection to that statement. His argument to the district court was that he "under oath stated he was not aware of the defaced weapon." (2004 S.Tr. at 3 (emphasis added).)

Finally, Brown points out that at his original sentencing hearing, the district court stated that while "the government has the right" to seek the Guidelines obliterated-serial-number enhancement despite not pursuing the criminal charges under 18 U.S.C. § 922(k), "it is not the right thing to do" (2004 S.Tr. at 20). Brown argues that the application of that enhancement to him on remand, after the Guidelines were declared advisory, was thus unreasonable. We reject this argument, given that the purpose of a Crosby remand is to permit the district court to determine whether to impose a different sentence knowing that the Guidelines--which had given the government the right to seek that enhancement--are not mandatory. On the remand in this case, the court acknowledged the advisory nature of the Guidelines, and it obviously concluded that the enhancement was appropriate even under the advisory Guidelines. We see no error or abuse of discretion in that conclusion.

D. Other Contentions

Brown's other challenges to his sentence, alleging procedural and substantive unreasonableness, need not detain us long.

- 23 -

### 1. The Alleged Failure To Consider the Sentencing Factors

Brown's contention that the district court failed to consider the § 3553(a) sentencing factors is meritless. As discussed in Part II.A. above, we have not required a sentencing judge to engage in robotic incantations either to demonstrate that he has discharged his duty to "consider" the required factors or to "address every argument relating to those factors that the defendant advanced." Fernandez, 443 F.3d at 30.

In the present case, the record, including those segments quoted in Part I.C. above, reveals that the court was aware both of the statutory requirements and of the recommended sentencing range and that it considered the required factors. Nothing in the record indicates that the court misunderstood the sentencing factors or their relevance.

### 2. The Alleged Unreasonableness of Imposing the Same Sentence

Brown also contends that the district court's resentencing him to the same 84-month sentence it had imposed originally was substantively unreasonable on the ground that the judge had "specifically stated at the initial sentencing that he would have sentenced [Brown] to 70 months if he had the choice" (Brown brief on appeal at 10). We reject this contention because the court did not make that statement.

What the district court said at the original sentencing was that it would have imposed a shorter prison term if Brown had not had such an extensive criminal record:

The problem that I have with the defendant's

- 24 -

> position is that <u>he is in a criminal category history four</u>. It is not that this is his first contact with the criminal justice system.
>
> <u>If he were not a criminal category history four</u>, notwithstanding Sentencing Guidelines as related by the government, I would sentence him to 70 months.

(2004 S.Tr. at 20-21.) Plainly the court did not state that it would have imposed the shorter sentence if only the Guidelines were not mandatory; to the contrary, the court said that if Brown had not had such an extensive criminal record, it "would" have sentenced him more leniently "notwithstanding [the] Sentencing Guidelines."

Nothing about Brown's criminal record changed between the original sentencing and the sentencing on remand. And the court's decisions in sentencing and resentencing Brown reveal that the court took seriously its obligation to consider, <u>inter alia</u>, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1).

E. <u>Correction of the Judgment</u>

Finally, we note <u>nostra sponte</u> that the judgment from which Brown has appealed does not accurately describe the counts of conviction. Although it initially states--accurately--that Brown "pleaded guilty to count(s) one through eight of the indictment," Judgment dated September 23, 2005, at 1, it lists his offense of "UNLAWFUL FIREARMS DEALING" as count "2," instead of count 1; and it lists "POSSESSION OF A FIREARM" as count "3," rather than counts 2-8, <u>id</u>. On remand, an amended judgment should be entered, accurately reflecting the counts of conviction.

CONCLUSION

We have considered all of Brown's arguments on this appeal and have found them to be without merit.  The sentence is affirmed; the matter is remanded for clerical correction of the judgment.