**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard DEBS, Defendant–Appellant.**

**No. 91–1149.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1991.

Decided Nov. 13, 1991.

Rehearing and Rehearing En Banc
Denied Jan. 6, 1992.

**200**

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Lynn A. Helland, Detroit, Mich., for plaintiff-appellee.

Harold Gurewitz (argued and briefed), Dise & Gurewitz, Detroit, Mich., for defendant-appellant.

Before RYAN and SUHRHEINRICH, Circuit Judges, and PECK, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Defendant Richard Debs, once the President of United Automobile Workers Local 1776, was indicted for violations of the Hobbs Act, 18 U.S.C. § 1951. Three counts of the indictment alleged that Debs solicited others to do wrongful violence to Robert Harlow to induce Harlow and others not to oppose Debs in the 1989 election for union president, "thereby attempting to deprive the membership ... of its right to nominate and vote ... for the office of president." The fourth count charged Debs with using extortion to cause another union member to be shot.

Debs filed a motion to dismiss, arguing that the indictment failed (1) to allege conduct proscribed by the Hobbs Act, (2) to identify the "property" claimed to be the object of extortion, and (3) to demonstrate

interference with interstate commerce. The district court denied Debs's motion as it related to the first two claims, and ordered the government to file a response identifying grounds for the allegation that interstate commerce was affected. Pursuant to a Rule 11 plea agreement, Debs pled guilty to one count of soliciting others to do wrongful violence and reserved the right to appeal the denial of his motion to dismiss the indictment. This appeal followed.

**I**

The Hobbs Act prohibits interference with interstate commerce by either robbery or extortion.[1] Designed to combat labor racketeering, the Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

**A**

■ Debs claims the conduct alleged in the indictment falls within the *Enmons* exception to Hobbs Act prosecutions. *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973). In *Enmons*, the Supreme Court held that the Hobbs Act "does not apply to the use of force to achieve legitimate labor ends." *Id.* at 401, 93 S.Ct. at 1010.

Debs finds solace in *Enmons* on the theory that campaigning in union elections "is a legitimate labor end," and thus the use of extortion in service of union political goals is beyond the scope of the Hobbs Act. Debs likens his extortionate act to a worker throwing a punch on a picket line or a striker deflating the tires of his employer's truck, each of which is exempt from Hobbs Act prosecution. *Enmons*, 410 U.S. at 410, 93 S.Ct. at 1015.

---

**1.** The Hobbs Act provides in relevant part: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a).

Debs would have us hold that because some illegality in union activity is justifiable every illegality, including extortion, must also be within the orbit of *Enmons.* Such a holding would immunize union members from sanction so long as their otherwise illegal action is committed in the context of labor activity. We decline to expand *Enmons* this far.

Indeed, *Enmons* has not been extended beyond its own facts. The Sixth Circuit has approached with caution a broad application of the *Enmons* exception to Hobbs Act prosecutions. *United States v. Jones,* 766 F.2d 994, 1002–1003 (6th Cir.1985), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985) (doubting whether *Enmons's* narrow exception to the Hobbs Act applies to the use of violence outside of the collective bargaining context, in pursuit of goals other than higher wages, and against individuals other than the strikers' employer.). Other circuits have also been reluctant to extend *Enmons. See United States v. Cerilli,* 603 F.2d 415 (3d Cir.1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 728, 62 L.Ed.2d 728 (1980); *United States v. Porcaro,* 648 F.2d 753 (1st Cir.1981). Debs's first argument does not persuade us.

### B

■ Debs's second submission is that loss of the opportunity to nominate, vote, assemble, and speak is a deprivation of *rights* rather than property. The indictment charged violations of rights provided by the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411 ("LMRDA"). Debs claims that the indictment should be dismissed because the Hobbs Act does not proscribe deprivations of intangible rights.

Courts have long held that the concept of property under the Hobbs Act is not limited to tangible property, but also includes "any valuable right considered as a source or element of wealth." *United States v.*

*Tropiano,* 418 F.2d 1069, 1075 (2d Cir. 1969), *cert. denied,* 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970). Intangible business rights, including the business rights of unions, are considered property. *United States v. Santoni,* 585 F.2d 667, 673 (4th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 459 (1979); *United States v. Local 560 of the International Brotherhood of Teamsters,* 780 F.2d 267, 281–282 (3d Cir.1985). Intangible property within the meaning of the Hobbs Act includes LMRDA rights. *Rodonich v. House Wreckers Union, Local 95,* 627 F.Supp. 176, 179 (S.D.N.Y.1985).

Debs relies on recent Supreme Court cases interpreting the mail and wire fraud statutes to suggest that intangible rights are no longer properly considered "property." *See McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *see also United States v. Runnels,* 877 F.2d 481 (6th Cir.1989). In *McNally,* the Supreme Court reversed a federal mail fraud conviction because the statute "clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *McNally,* 483 U.S. at 356, 107 S.Ct. at 2879–80. The question before us is whether LMRDA rights constitute property under the Hobbs Act. We believe the answer is yes, and regard Debs's reliance on *McNally* as doubly misplaced.

First, assuming property carries the same meaning in the mail and wire fraud statutes as in the Hobbs Act,[2] in *McNally* the Supreme Court was clearly concerned with federalism. The Court read the statute narrowly in order to prevent the federal government from "setting standards of disclosure and good government for local and state officials." *Id.* at 360, 107 S.Ct. at 2882.

*McNally's* federalism rationale has no analogue in the union arena. With regard

---

**2.** The Hobbs Act was patterned after a New York extortion law, under which one New York court held that union membership rights are protected property interests. *Dusing v. Nuzzo,*

177 Misc. 35, 36, 29 N.Y.S.2d 882 (Sup.Ct.), *modified on other grounds and aff'd,* 263 A.D. 59, 31 N.Y.S.2d 849 (1941).

to the federal-state balance in this case, there is no doubt that Congress has had a longstanding interest in regulating the affairs of labor unions. *McNally* therefore cannot control the federal government's obligations toward the conduct of union business.

Second, the intangible right to honest government at issue in *McNally* is substantially different from the right to participate in union elections. Honest government is subject to control by an informed electorate operating in a vital two-party system. The federal government need not impose its will where a regime of political accountability is already in place.

By contrast, union politics is more like one-party government. The statutory right to participate in union government is not held accountable by anything remotely like a thriving two-party system. Here, the federal legislature and courts have a greater duty to combat labor corruption and electoral vice. The Hobbs Act is an important instrument in service of this democratic objective. For all of these reasons, LMRDA rights are property under the Hobbs Act.

### C

■ Finally, a challenge is presented to the indictment's specificity regarding the effect of extortion on interstate commerce. The language of the statute is broad and refers to interference with commerce "in any way or degree." 18 U.S.C. § 1951(a). This court has said that "[i]n order to be punishable as a substantive violation of the Hobbs Act, an extortionate scheme must have at least a *de minimis* effect on interstate commerce." *United States v. DiCarlantonio*, 870 F.2d 1058, 1060 (6th Cir. 1989). The interstate commerce requirement "has been read broadly to allow purely intrastate activity to be regulated under the theory that there was a *realistic probability* that the activity would have affected interstate commerce." *United States v. Peete*, 919 F.2d 1168, 1175 (6th Cir.1990). In view of the light burden on the government and the sweeping language .of the Hobbs Act, we find that the indictment was

sufficient to put Debs on notice of the charges against him.

### II

To sum up, Debs's threefold challenge to the sufficiency of the indictment is meritless. The judgment of the district court is affirmed.