06-1600-cr
United States v. Markle

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: September 9, 2009                    Decided: December 14, 2010 )

Docket No. 06-1600-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

STEVEN MARKLE,

*Defendant-Appellant*.

_____

JACOBS, *Chief Judge*, POOLER and B.D. PARKER, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, *J.*), convicting Appellant Steven Markle of two counts of attempted Hobbs Act extortion in violation of 18 U.S.C. § 1951(a).  Markle was sentenced to two concurrent terms of 57 months in prison, followed by two concurrent terms of two years of supervised release.  We conclude the district court did not err in denying a defense under *United States v. Enmons*, 410 U.S. 396 (1973), because such defense is limited to labor-management disputes and does not extend to inter-union violence.  Lastly, we conclude that the district court did not improperly enhance Markle's sentence.  Accordingly, we affirm the district court.

STEPHAN BACZYNSKI, William J. Hochul, Jr. (*on the brief*), and Brett A. Harvey (*on the brief*), Assistant United States Attorneys, *for* Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

RANDALL D. UNGER, Bayside, New York, *for Defendant-Appellant*.

_____

POOLER, *Circuit Judge*:

Steven Markle appeals from a March 23, 2006 judgment of conviction and sentence of the United States District Court for the Western District of New York (Arcara, *J.*). A jury found Markle guilty of two counts of attempted Hobbs Act extortion in violation of 18 U.S.C. § 1951(a). The district court entered a judgment of conviction and sentenced Markle to two concurrent terms of 57 months' imprisonment, followed by two concurrent terms of two years of supervised release.

On appeal, Markle raises two issues. First, Markle argues that the district court denied his right to a fair trial by precluding a defense under *United States v. Enmons*, 410 U.S. 396 (1973). Markle argues that the district court erred by holding that the defense was unavailable as a matter of law. Markle requests that we vacate the judgment of conviction and remand for a new trial. Second, Markle argues that the district court erred by imposing sentence enhancements of two levels for bodily injury and one level for monetary loss. Markle requests that we vacate his sentence and remand to the district court.

We affirm the district court's judgment of conviction and sentence. Although *Enmons* created a defense to Hobbs Act liability, the district court correctly concluded that such a defense

2

was not available here.  The *Enmons* defense is limited to labor-management disputes and does not extend to inter-union violence.  Lastly, the district court did not improperly enhance Markle's sentence based on bodily injury and monetary loss.

## I.    FACTS

On September 16, 1998, Markle was involved in a fight between his union, Laborers International Union of North America, Local 91 ("Local 91"), and the Bricklayers and Allied Craftsmen Union ("Bricklayers Union") at a construction site in Niagara Falls, New York.  Both unions claimed that they had an exclusive contractual right to perform fine sweep work at the construction site for E.G. Sackett Company.  Such work is the final, critical step to prepare a floor surface before installing tile.  The unions' disagreement escalated into violence.  At least fifteen members of Local 91, including Markle, confronted and then physically attacked members of the Bricklayers Union at the construction site.

After the attack, at least four members of the Bricklayers Union sought medical treatment. James Skidds testified that he was treated at the hospital for an elbow abrasion and tenderness in the thigh, and he received a tetanus shot.  Kyle Acel was treated for bruised ribs, shoulder, jaw, and back.  Ira Maney went to the hospital and later testified that he "was hurting pretty bad." Leon Carr took off two days of work after he was treated for pain while breathing, abrasions, and bruises.

On June 25, 2003, a federal grand jury indicted Markle and fourteen other Local 91 members.  Markle was charged with two counts of attempted Hobbs Act extortion.  *See* 18 U.S.C. § 1951(a), (b)(2).

Before trial, Markle moved to dismiss the Government's charges of attempted Hobbs Act

3

extortion, arguing that under *United States v. Enmons*, 410 U.S. 396 (1973), the Hobbs Act does not extend to his alleged conduct. The district court denied Markle's motion to dismiss, ruling that the *Enmons* defense "is inapplicable to this case" because Markle's alleged conduct was not incident to a collective bargaining dispute between an employer and labor union, and it was not in pursuit of "legitimate labor ends." Relying on this ruling, the district court precluded Markle from presenting the *Enmons* defense at trial and refused to instruct the jury on the defense. The jury found Markle guilty of both counts of attempted Hobbs Act extortion.

On March 7, 2006, the district court sentenced Markle to concurrent terms of 57 months' imprisonment, concurrent terms of two years' supervised release, and ordered Markle to pay $20,000 in restitution to E.G. Sackett Company. As relevant to this appeal, the district court calculated Markle's Sentencing Guidelines range to include a two-level enhancement for bodily injuries sustained by the Bricklayers Union victims, U.S.S.G. § 2B3.2(b)(4)(A), and a one-level enhancement for the $20,000 loss sustained by E.G. Sackett Company, *id.* § 2B3.2(b)(2).

## II.  DISCUSSION

On appeal, Markle challenges the district court's rulings precluding Markle from pursuing an *Enmons* defense at trial and imposing sentence enhancements of two levels for bodily injury and one level for monetary loss.

### A.    The *Enmons* Defense

The Hobbs Act criminalizes conduct that "in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." 18 U.S.C. § 1951(a). The Act defines "extortion" as "the

4

obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* § 1951(b)(2).

In *Enmons*, the Supreme Court held that Hobbs Act liability does not extend to conduct in pursuit of "legitimate labor ends." 410 U.S. at 398. The Court held that where violence is used "to achieve legitimate union objectives," there is "no 'wrongful' taking of the employer's property" under the Hobbs Act. *Id.* at 400. Conduct is "wrongful" under the Hobbs Act only if "the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property." *Id.* Where violence occurs during a lawful strike, as in *Enmons*, there is no "wrongful" use of violence to obtain property under the Hobbs Act because even if higher wages are won, the employer "has paid for the services he bargained for, and the workers receive the wages to which they are entitled in compensation for their services." *Id.*

The *Enmons* Court stated that Congress did not intend the Hobbs Act to extend to "violence during a strike to achieve legitimate collective-bargaining objectives." *Id.* at 404. On this point, the Court found the legislative history clear. In introducing the original bill, Congressman Hobbs stated that it "does not cover strikes or any question relating to strikes." *Id.* at 405 (quoting 89 Cong. Rec. 3213). Further, Congressman Walter stated that the bill did not "interfere in any way with any legitimate labor objective or activity." *Id.* at 404 (quoting 91 Cong. Rec. 11841).

Lastly, the *Enmons* Court found that "no reported case" had applied the Hobbs Act to "the use of force to achieve legitimate collective-bargaining demands." *Id.* at 408. Although a few cases dealt with labor unions and employers, these cases "concerned the exaction, by threats and violence, of wages for superfluous services." *Id.* at 408-09. The Court found that such objectives

5

were "illegitimate" and the use of violence to attain them was not exempted by the Hobbs Act. *Id.* at 407 (describing as "illegitimate" the "exaction of personal payoffs, or the pursuit of 'wages' for unwanted or fictitious services").

Here, Markle argues that the *Enmons* defense is not limited to labor-management disputes and provides a defense to prosecution under the Hobbs Act for violence between unions. We disagree. As discussed below, a violent attack on members of a competing union to gain the competing union's work is not a legitimate labor union objective within the meaning of *Enmons*.

### 1. *Enmons* **Is Limited to Labor-Management Disputes**

We review the district court's decision not to allow the presentation of a defense *de novo*. *See United States v. Kopp*, 562 F.3d 141, 145 (2d Cir. 2009) (per curium).

In this Circuit, we have declined to extend the *Enmons* defense to non-labor cases. *See United States v. Zappola*, 677 F.2d 264, 269 (2d Cir. 1982) (holding that a reasonable belief that victims owed defendants money is not a defense to Hobbs Act extortion). And in labor cases, we have held that a defendant cannot invoke the *Enmons* defense if the defendant's alleged actions lacked a legitimate labor union objective. For example, although the *Enmons* defense applies in certain circumstances to "efforts to induce the hiring of minorities," it does not apply to illegitimate labor union objectives, such as efforts to obtain money and no-show jobs with threats of violence. *Mulder v. United States*, 273 F.3d 91, 105-06 (2d Cir. 2001); *United States v. Taylor*, 92 F.3d 1313, 1319 n.2, 1333 (2d Cir. 1996).

Other circuit courts rarely have extended *Enmons* beyond the context of strikes or collective bargaining negotiations between unions and employers. *See, e.g.*, *Robbins v. Wilkie*, 433 F.3d 755, 769 (10th Cir. 2006), *rev'd on other grounds*, 551 U.S. 537 (2007) ("[T]he claim of

6

right defense should be limited to the facts of *Enmons*, specifically the use of force, violence, or fear in the context of a labor dispute."); *United States v. Debs*, 949 F.2d 199, 200-01 (6th Cir. 1991) (rejecting defense that campaigning in a union election is included as a legitimate labor end); *United States v. Castor*, 937 F.2d 293, 299 (7th Cir. 1991) ("Whatever the contours of that defense may be, they do not reach . . . outside the labor context."); *United States v. Porcaro*, 648 F.2d 753, 760 (1st Cir. 1981) (limiting *Enmons* to the "labor context and more specifically to the strike context").

Markle argues that *Enmons* extends to violence committed by one union against another for the purpose of "establishing the proper allocation of work between the laborers and tile setters." We disagree. Nothing in the statutory text or legislative history of the Hobbs Act, in *Enmons*, or in our case law suggests that inter-union violence not connected to a labor-management dispute is exempt from Hobbs Act liability. As the Supreme Court stated in *Enmons*, Congress intended the Hobbs Act to exempt "violence during a strike to achieve legitimate collective-bargaining objectives." *Enmons*, 410 U.S. at 404. Violence committed outside the context of a labor-management dispute, by one union against another, does not have a legitimate collective-bargaining objective under the Hobbs Act. The *Enmons* defense is limited to labor-management disputes and does not extend to inter-union violence.

Because the *Enmons* defense was unavailable to Markle as a matter of law, the district court properly precluded him from advancing that defense at trial and properly declined to instruct the jury on that defense. Therefore, the district court did not violate Markle's right to a fair trial.

**B.      The District Court Did Not Improperly Enhance Markle's Sentence**

Markle also challenges the district court's sentence enhancements of two levels for bodily

injury and one level for monetary loss.

We review a sentencing court's interpretation of the United States Sentencing Guidelines *de novo* and its related findings of fact for clear error. *United States v. Guang*, 511 F.3d 110, 122 (2d Cir. 2007). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). We look at facts in the light most favorable to the Government. *Id.* at 123.

Issues not raised at trial, however, are reviewed for plain error. *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009). Plain error is (1) error (2) that is plain and (3) affects substantial rights. *United States v. Folkes*, 622 F.3d 152, 156 (2d Cir. 2010) (per curiam). Once we have noticed plain error, we have discretion "to decide whether to correct it, and we will do so only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (omitting brackets, quotation marks, and citations).

### 1. Bodily Injury Enhancement

Section 2B3.2(b)(4)(A) of the Sentencing Guidelines provides for a two-level enhancement "[i]f any victim sustained bodily injury." The Government requests plain error review because Markle did not object to this enhancement at sentencing. However, Markle did object to all seven enhancement levels in his "Objections to Presentence Investigation Report." Therefore, we will review for clear error.

A "bodily injury" is "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. 1(B). Markle argues that the injuries here were not sufficiently significant. Although determining

whether an injury is "significant" requires a fact-specific inquiry, injuries warranting medical attention generally are deemed "significant." *E.g.*, *United States v. Robinson*, 20 F.3d 270, 278-79 (7th Cir. 1994) (spraying with Mace, causing pain for hours, and residual effects for days); *United States v. Hamm*, 13 F.3d 1126, 1127-28 (7th Cir. 1994) (knocking victim down, causing bumps, bruises, and an injury treated by a chiropractor); *United States v. Greene*, 964 F.2d 911, 911-12 (9th Cir. 1992) (per curiam) (a slap in the face, causing swelling and pain requiring medical attention). On the other hand, "minor" injuries are not included. *United States v. Lancaster*, 6 F.3d 208, 209-10 (4th Cir. 1993) (per curiam) (overturning enhancement because the injury was insignificant and momentary).

Here, four victims were treated at the hospital for injuries, detailed *supra*. The district court did not clearly err by finding that those victims suffered significant injuries and imposing a two-level enhancement under Section 2B3.2(b)(4)(A).

### 2. Loss to Victim Enhancement

Sections 2B3.2(b)(2) and 2B3.1(b)(7) of the Sentencing Guidelines together provide for a one-level enhancement if the loss to the victim was between $10,000 and $50,000. "Loss to the victim" includes "any demand paid plus any additional consequential loss from the offense (e.g., the cost of defensive measures taken in direct response to the offense)." U.S.S.G. § 2B3.2 cmt. 5. This loss need not be calculated with absolute precision. *Guang*, 511 F.3d at 123 ("A district court need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." (internal quotation marks omitted)).

Here, Patrick Leva, the Vice President and Owner of E.G. Sackett Company, which installed tile at the Niagara Falls construction site, testified that because of the attack his company

9

suffered damages "in the neighborhood of $20,000." As the person in charge of the company's finances, Leva estimated the company's loss by relying principally on his recollection. Leva testified that the project's time schedule was changed, which resulted in extra costs in wages and benefits for additional workers, overtime, travel pay, gas, and van rental. Markle argues that the company saved money because the job finished three weeks ahead of schedule. Leva, while acknowledging that the job finished early, strongly disagreed that the violent attack on his employees saved money. The district court found Leva to be a "wholly credible witness" and accepted his testimony.

Because the Government presented sufficient evidence to support the enhancement and we are not left with a "definite and firm conviction that a mistake has been committed," *Guang*, 511 F.3d at 122, the district court did not clearly err by imposing this sentence enhancement.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment of conviction and sentence.